ALBERT P. DE VALENGIN'S ADMINISTRATORS, PLAINTIFFS IN
ERROR, *vs.* JOHN H. DUFFY, DEFENDANT IN ERROR.

It has been frequently held, that the device of covering property as neutral, when in truth it
was belligerent, is not contrary to the laws of war or of nations. Contracts made with un-
derwriters in relation to property thus covered, have always been enforced in the Courts
of a neutral country, where the true character of the property, and the means taken to
protect it from capture have been fairly represented to the insurers. The same doctrine
has always been held where false papers have been used to cover the property, provided
the underwriter knew, or was bound to know, that such stratagems were always resorted
to by the persons engaged in that trade. If such means may be used to prevent capture,
there can be no good reason for condemning with more severity, the continuation of the
same disguise after capture, in order to prevent the condemnation of the property, or to
procure compensation for it, when it has been lost by reason of the capture. Courts of
the capturing nation would never enforce contracts of that description; but they have
always been regarded as lawful in the Courts of a neutral country.

Whatever property or money is lawfully recovered by the executor or, administrator, after
the death of his testator or intestate, in virtue of his representative character, he holds as
assets of the estate; and he is liable therefor in such representative character, to the
party who has a good title thereto. The want of knowledge, or the possession of know-
ledge on the part of the administrator, as to the rights and claims of other persons upon
the money thus received, cannot alter the rights of the party to whom it ultimately
belongs.

The owner of property or of money received by an administrator, may resort to the ad-
ministrator in his personal character, and charge him, de bonis propriis, with the amount
thus received. He may do this, or proceed against him as executor or administrator,
at his election. But whenever an executor or administrator, in his representative cha-
racter, lawfully receives money or property, he may be compelled to respond to the party
entitled, in that character; and shall not be permitted to throw it off after he has received
the money, in order to defeat the plaintiff's action.

In the case of a factor who sells the goods of his principal in his own name, upon a credit,
and dies before the money is received, if it is afterwards paid to the administrator in
his representative character, the creditor would be entitled to consider it as assets in his
hands; and to charge him in the same character in which he received it. The debtor,
that is to say, the party who purchased from the factor without any knowledge of the
true owner, and who paid the money to the administrator under the belief that the goods
belonged to the factor, is unquestionably discharged by this payment; yet he cannot be
discharged unless he pays it to one lawfully authorized to receive it, except only in his
representative character.

IN error to the Circuit Court of the United States for the District
of Maryland.

In the Circuit Court of Maryland, John H. Duffy, the defendant
in error, instituted a suit against the administrators of Albert P. De
Valengin, for the recovery of a sum of money which he claimed to
belong to him, being a portion of the indemnity paid by the govern-
ment of Brazil, for the capture and loss of the brig President Adams,
by a Brazilian cruiser, in 1828.

John H. Duffy, a citizen of the United States, domiciled at Buenos
Ayres, in 1828, shipped a quantity of hides, and other articles of
merchandise, in 1828, on board the brig President Adams, com-
manded and part owned by Albert P. De Valengin, a citizen of Bal-

timore, for Gibraltar. The government of Brazil, and that of Buenos Ayres were then at war.

For the better security of the property from Brazilian capture, the property was shipped in the name of De Valengin, and soon after she sailed she was captured by an armed vessel of Brazil, and carried into Monte Video. There, both vessel and cargo were totally lost.

Under an agreement between John H. Duffy and Captain De Valengin, a claim for the cargo as well as the vessel was made by him on the government of Brazil, for indemnity. The ownership of John H. Duffy was concealed in this application; as his property was liable to capture by the cruisers of Brazil; he being domiciled at Buenos Ayres. Captain De Valengin died before any thing was recovered from the government of Brazil for the President Adams and cargo; and a certain James Neale, who had become his administrator, under letters of administration granted in Maryland, prosecuted the claim as the representative of De Valengin; and was, at length, paid the indemnity in Baltimore, by the aid of Mr. James Birkhead, of Rio de Janeiro; who remitted it to him from that place. The proceeds of the property remitted by Mr. Birkhead, were returned in an inventory filed by Mr. Neale, as administrator, in the Orphans Court, at Baltimore, as the estate of De Valengin.

A suit for the recovery of the amount claimed by John H. Duffy, was instituted in the Circuit Court of the United States against James Neale, as the administrator of De Valengin; and he having died before the trial of the cause, and the plaintiffs in error having taken out letters of administration, de bonis non, to the estate of De Valengin, they were summoned, and they appeared and took defence in the action.

In the declaration in the action, the only count applicable to the controversy between the parties to the suit, was that for money had and received by James Neale, the administrator of De Valengin, for the use of the plaintiff. On the issues of non assumpsit and plene administravit, the jury found for the plaintiff on the first, and for the defendants on the second count. The Circuit Court entered a judgment on the first plea for the amount found by the jury, fourteen thousand and thirteen dollars and sixty-seven cents: the judgment to bind assets.

From this judgment the defendants prosecuted this writ of error.

On the trial of the cause in the Circuit Court, the defendants took a bill of exceptions to the decisions of the Court, on six different propositions or prayers, submitted by their counsel for the opinion of the Court. The bill of exceptions contains the whole evidence in the cause. All the prayers of the counsel for the defendants were refused by the Court.

The opinion of the Supreme Court on the matters presented under the writ of error, was given on two propositions; into which all those submitted in the Circuit Court were considered to be resolved.

" 1. That the agreement between Captain De Valengin and John

[De Valengin's Administrators vs. Duffy.]

H. Duffy, under which De Valengin was to claim remuneration from the Brazilian government, for the loss of the brig President Adams and her cargo, on the ground of its being neutral property; when, in truth, the cargo was the property of John H. Duffy, and therefore belligerent, and liable to capture by the laws of nations; was fraudulent and immoral: and that the Courts of Justice of the United States will not assist a party to recover money due on such agreement."

" 2. That if the money belonged to John H. Duffy, the action would not lie against Neale, as administrator, nor the money be assets in his hands of De Valengin's estate; that his return to the Orphans Court cannot alter the character of the transaction: and that this suit ought to have been continued against Neale's administrator, and not against the representatives of De Valengin."

The case was submitted to the Court on printed arguments, by Mr. M'Mahon and Mr. Johnson, for the plaintiffs in error; and by Mr. Williams, for the defendant in error.

On the first proposition, as stated by the Circuit Court in its opinion: the counsel for the plaintiffs in error contended, that the alleged agreement between John H. Duffy, the defendant in error, and Captain De Valengin, by which the latter was to prosecute the claim on the Brazilian government, for indemnity for the loss of the brig President Adams and her cargo, representing the whole property to belong to him, and, as such, not liable to capture; proposes nothing more or less than the case of two persons conspiring to cheat a third party out of his property.

The object of the agreement was merely to extract money from the third party; and this was to be accomplished by conspiring to make a false and fraudulent representation of an injury done to one of them, who, in fact, had sustained no injury; and this falsely alleged injury is made the sole basis of the payment by the third party. The verdict of the jury admits that the payment was made only in consequence of the false and concerted misrepresentations; and would not have been made, if the truth had not been suppressed by the conspiracy.

It is contended, that such an agreement will be held fraudulent everywhere; and that, in such a case, the fraud has no locality.

If two individuals were to conspire, in a foreign country, to obtain money from a third party, either by highway robbery or theft, or by cheating of any description; and under the conspiracy, one of them were to obtain the money of the third party; it would scarcely be contended, that under such an agreement, the other could claim from his associate in the conspiracy a share of the plunder, through the instrumentality of a Court of justice. It is contended that there is no difference between such a case, and a conspiracy to cheat a government: and that such 'a conspiracy is essentially different as it regards its validity in our Courts, from contracts made for the purpose of evading the revenue laws, or the mere commercial regula-

tions of a foreign country; when to invalidate such a contract would be substantially to enforce such laws and regulations.

It is contended, also, that not only was such an agreement void; and that thereby the principal fact on which the Court instructed the jury in favour of the plaintiff in the Circuit Court was removed from the case; but that the existence of such an agreement necessarily prevented a recovery from the plaintiffs in error: as it would have precluded a recovery against De Valengin, if he had obtained the money from the Brazilian government.

The case put on the whole of the proof of the defendant in error, established this fraudulent agreement, and showed that the money had been obtained by false documents, furnished by John H. Duffy, or obtained by his aid and with his privity.

The property thus coming into the possession of the administrator, the effect of this action was and is to repudiate the plaintiff's own fraudulent documents, evidencing title in De Valengin; and to reclaim the property by force of the agreement to pay over the money to him when recovered. The action could only be maintained upon the agreement to pay over the money when received; he having parted with the title for the fraudulent purpose: this agreement to pay over was a part and parcel of the corrupt and fraudulent agreement, which could not be severed from the latter, nor established without proof of it. The case, therefore, fell within the scope of the well established principle, "that when recovery cannot be had except by proof of the illegal or corrupt agreement, or through the medium of it, it cannot be had at all."

The counsel for the plaintiffs in error also contended, that the proof of the fraudulent agreement showed conclusively that the defendant in error had no title to the money sought to be recovered: that by his own showing, the title to it was in the Brazilian government; that the money sought to be recovered was not, and never had been his property or the proceeds of his property: but was, on the contrary, a sum of money originally belonging to the Brazilian government, and obtained by fraud from it; and the proof of the fraud furnished by himself, and shown in the agreement supposed by the prayer, established that the title was still in the said government, and not in the defendant in error.

Upon the second proposition, as stated in the opinion of the Court, that the action would not lie against Neale as administrator, nor the money be assets in his hands, of the estate of De Valengin; that the return of Neale to the Orphans Court cannot change the character of the transaction; and that the action should have been continued against Neale's administrator, and not against the plaintiffs in error: the counsel for the plaintiffs in error contended:

The only pretence of claim against the estate of De Valengin and the plaintiffs in error, as administrators de bonis non of his estate, is founded on the allegation that Neale, in his lifetime, received the proceeds of property which did not belong to De Valengin, but in fact belonged to the defendant in error, John H. Duffy; and had

wrongfully carried it into the estate of which he was adminis-
trator.

The administrator could not, by a wrongful receipt or conversion
of property which did not belong to the intestate, create a debt
against the intestate, or charge against the estate of the intestate,
which enables the owner of the property to come in as a general
creditor against the estate. The administrator alone is personally
liable for such wrongful receipt or conversion; even where the pro-
perty has gone to the benefit of the estate.

This is established by numerous and uncontradicted decisions,
which settle it beyond controversy, that upon a count for money
had and received by an administrator, no other judgment can be
rendered than the judgment de bonis propriis; and that such a count
cannot be joined with any counts on an indebtedness of the intestate,
or with any indebtedness of the administrator, as such; such as mo-
ney paid for the use of the estate, &c., which does create a debt
against the estate. Cited, Jennings vs. Newman, 4 D. and East,
348. Bridges vs. Parker, 2 Bos. and Pull. 424. Powell vs. Gra-
ham, 7 Taunt. 580, (2 S. and Low. 223.) Ashley vs. Ashley, 7 B.
and Cres. 444, (14 S. and Low. 771.) 1 Chitt. Precedents, 46,
note. Reynolds vs. Reynolds, 3 Wend. 240. Sumner vs. Williams,
8 Mass. Rep. 198.

Even if there was any remedy against the estate in such a case,
it would be found only in the right to follow and reclaim the specific
property so wrongfully carried into the estate, by a proceeding for
the specific recovery of it, or by a special claim against the estate
founded on the allegation that the property had been carried into
the estate and appropriated to its uses: and this, even if the recovery
could not be had against the estate, through the medium of the mere
common count for money had and received by the administrator.

There was no foundation for any such claim against the estate, as
it was conceded that Neale died after having sold the property and
received the proceeds, and that no part of the said proceeds had ever
been paid over to the plaintiffs in error, or accounted for to them
either by Neale in his lifetime, or by his administrators since his
death: and the plaintiff had therefore an ample remedy against
Neale's administrators for the recovery of the money. It was
insisted that the mere return of it in an inventory by Neale, could
vary the question; not only because he could not by his mere act
of charging himself with it to the estate, make the estate a debtor
therefor to the owners: but also because the recovery by title para-
mount, in an action by Duffy against Neale, or his administrators,
would have been a full protection against any claim founded on the
mere return in the inventory. There is nothing in the Maryland act
of 1820, ch. 174, to change the common law rules on this subject,
(as was supposed in the Court below,) or even to bring it within the
operation of that act as expounded by the Courts of Maryland, in
Sibley vs. Williams, 3 Gill and Johnson, 63, 64: and that there was
no evidence in the cause to show that the money received by Neale

on the sales was in such a predicament, that the plaintiffs in error or administrators de bonis non could have pursued and recovered the money, according to the construction of that act in the case just referred to: and that the plaintiff's remedy as to assets, in such a predicament, was against Neale's estate, or on his bond.

Mr. Williams, for the defendant in error.

By the laws of Maryland, administrators de bonis non are entitled, and their duty requires them to demand from the legal representatives of the former administrator, the delivery over to them of all bonds, notes, accounts, and evidences of debt, and to require the payment over of all money, belonging to the original estate. And such bonds, &c. and money are assets in the hands of the administrators de bonis non. Laws of Maryland, 1798, ch. 101, sub ch. 14, sec. 2 ; 1820, ch. 174, sec. 3—5.

It is, accordingly, not only the right, but the duty of the plaintiffs in error, to demand from Neale's representatives the money and property, admitted by him in his lifetime to be in his hands, as the estate of De Valengin. The representatives of Neale cannot claim this property as a part of his estate. Nor can the new administrators of De Valengin reject it as forming no part of De Valengin's estate.

If the administrators de bonis non have neglected, and are neglecting to perform their duty in not calling on Neale's representatives for a delivery over of the property of their intestate ; they can be compelled, by application to the proper tribunal, to discharge their duty in this particular.

In the meantime it cannot be an objection, to be urged by the delinquent parties themselves, that they have failed in their duty. Nor, surely, ought it to work a loss or an injury to Duffy; that he has presumed they have fulfilled, or will fulfil the obligations prescribed by law in this respect.

And, further, if Duffey had the alternative, as he doubtless had, under the circumstances of this case, to treat Neale in his individual character as his debtor ; he most clearly had a right to embrace the more disadvantageous alternative of regarding De Valengin's estate as his debtor. In adopting the latter alternative, as has been before remarked, it cannot belong to the plaintiffs in error to falsify Neale's admission ; and deny that to be their intestate estate, which the first administrator declares on oath to be such. There is as little grace, as there is law, in placing themselves in such attitude. 2 Will. Ex. 1086. 1 Taunt. 322.

As to the assumption of the counsel for the plaintiffs in error, that the contract between De Valengin and the defendant was fraudulent and immoral, under which the indemnity for the cargo of the President Adams was claimed from the Brazilian government, and therefore cannot be made the subject of a suit in a Court of the United States ; the counsel for the defendant in error said, that it assumes that in a Court of the United States, between citizens of the United

States, an agreement cannot be enforced, which seeks to guard bona fide American property from seizure by one belligerent power that is at war with another; both of them being at peace with the United States.

The device practised in this case, by placing the property in the name of the captain, is not forbidden either by the laws of nations, the laws of war, or the laws of morality.

The residence of Duffy in Buenos Ayres; which imposes upon him a temporary allegiance to one of the belligerent parties; may subject his property, if captured, to condemnation in the Courts of the other. But if the property is restored or indemnified for, either because the capturing power chooses to waive its right to condemn, or because the residence of its true owner is unknown, it ought clearly to enure to the benefit of the true owner against all the rest of the world. It would be monstrous, and against all law and justice to allow the other contracting party, who has participated in the seizure, to claim that as his own which he admits to be another's; and which he has promised to account for when received. 1 Bos. and Pull. 3. 7 Wheat. 283. 8 Wheat. 294.

The cases relied on by the defendants below, are irrelevant to the points in issue. They chiefly relate to controversies between a neutral and a belligerent: as 2 Dall. 34. 1 Kent's Com. 143. 7 Wheat. App. 27. Story's Confl. L. 214 : or to cases of insurance, where there was a concealment of material facts, as 3 Wash. C. C. R. 391. 2 Phil. Ins. 130.

Mr. Chief Justice TANEY delivered the opinion of the Court.

This case comes here, upon a writ of error to the Circuit Court for the District of Maryland.

It appears from the record, that John H. Duffy, an American citizen, being engaged in commerce and domiciled at Buenos Ayres, snipped a cargo of hides and lard to Gibraltar, on board the brig President Adams, in 1828. Buenos Ayres was then at war with Brazil. The President Adams was an American vessel; and De Valengin, her captain, was a citizen of the United States. He was also part owner of the vessel.

In order to protect the cargo from capture by the Brazilians, it was shipped as the property of De Valengin; and the bill of lading, and other papers in relation to it, were made out in his name. The brig was, however, captured on her voyage by a Brazilian cruiser, and was wrecked; and the vessel and cargo totally lost, near Monte Video, while in possession of the captors; who were endeavouring to carry her into port.

De Valengin being the ostensible owner of the cargo, he, with the consent of Duffy, prosecuted a claim for remuneration from the Brazilian government; insisting that the property belonged to him; that it was neutral property, and therefore, unlawfully captured. De Valengin died before he recovered any thing; and after his death, James Neale took out letters of administration on his estate,

in the city of Baltimore, and continued to prosecute the claim upon the ground that the property was De Valengin's; and at length succeeded in obtaining compensation for it from the Brazilian government. The money was paid to Neale's agent at Rio de Janeiro, and invested in coffee, and shipped to him to Baltimore; where he received and took possession of it as property belonging to De Valengin's estate, and as his administrator. It was duly appraised as the property of De Valengin, and returned as such by Neale, to the Orphans Court, in January, 1834; and afterwards was sold by him, and the money received. It does not appear from the evidence, whether Neale had or had not any knowledge of the interest of Duffy in the cargo, while he was prosecuting the claim against the Brazilian government; or when he received the compensation for it.

In March, 1834, Duffy brought suit against Neale for the money he had thus received. The suit was against Neale as administrator of De Valengin. In 1836, Neale died, the suit being still pending; and after his death, process was issued against the present plaintiffs in error; who are the administrators de bonis non of De Valengin; in order to make them defendants to the suit which he had instituted against Neale in his lifetime, as administrator as aforesaid.

The declaration was amended by the plaintiff after the appearance of the administrators de bonis non; and the only count applicable to the case, as it appears in the testimony, was that for money had and received by Neale, as administrator of De Valengin, to and for the use of the plaintiff. The defendants pleaded non assumpsit and plene administravit, upon which issues were joined; and the jury four 1 for the plaintiff on the first issue, and for the defendants on the second; and the judgment was entered for the amount found due by the jury in the usual form, to bind assets when they shall arise.

At the trial, several instructions were asked for by the defendants, which were refused by the Court. They may all, however, be resolved into two. 1. That the agreement between De Valengin and Duffy, to claim remuneration from the Brazilian government, upon the ground that it was neutral property, when in truth it was Duffy's, and therefore, belligerent, and liable to capture by the laws of nations, was fraudulent and immoral; and that the Courts of justice of this country, will not assist a party to recover money due on such an agreement.

2. That if the money belonged to Duffy, the action would not lie against Neale as administrator, nor the money be assets in his hands, of De Valengin's estate; that his return to the Orphans Court cannot alter the character of the transaction; and that the suit ought to have been continued against Neale's administrator, and not against the representatives of De Valengin.

The first question may be disposed of in a few words. It has been frequently held, that the device practised in this case, of covering the property as neutral when in truth it was belligerent,

is not contrary to the laws of war, or the laws of nations. And contracts made with underwriters in relation to property thus covered, have always been enforced in the Courts of a neutral country, when the true character of the property and the means taken to protect it from capture, have been fairly represented to the insurer. The same doctrine has always been held where false papers were used to cover the property; provided the underwriter knew or was bound to know that such stratagems were always resorted to by persons engaged in that trade. And if such means may be used to prevent a capture, there can be no good reason for condemning with more severity, the continuation of the same disguise after capture, in order to prevent the condemnation of the property, or to procure compensation for it, when it has been lost by reason of the capture. It is true the Courts of the capturing nation would never enforce contracts of that description; but they have always been regarded as lawful in the Courts of a neutral country.

The second question is one of more nicety, and the cases are not entirely reconcilable to each other. There are, doubtless, decisions which countenance the doctrine that no action will lie against an executor or administrator, in his representative character, except upon some claim or demand which existed against the testator or intestate in his lifetime; and that if the claim or demand wholly accrued in the time of the executor or administrator, he is liable therefor, only in his personal character. But upon a full consideration of the nature, and of the various decisions on the subject, we are of opinion, that whatever property or money is lawfully recovered or received by the executor or administrator, after the death of his testator or intestate in virtue of his representative character, he holds as assets of the estate; and he is liable therefor, in such representative character to the party who has a good title thereto. In our judgment, this, upon principle, must be the true doctrine.

In the case of a factor who sells the goods of his principal in his own name, upon a credit, and dies before the money is received, if it is afterwards paid to the administrator in his representative character; would not the creditor be entitled to consider it as assets in his hands, and to charge him in the same character in which he received it? The want of knowledge, or the possession of knowledge on the part of the administrator, as to the rights or claims of other persons upon the money thus received, cannot alter the rights of the party to whom it is ultimately due. The debtor, that is to say, the party who purchased from the factor without any knowledge of the true owner, and who pays the money to the administrator under the belief that the goods belonged to the factor himself, is unquestionably discharged by this payment. Yet he cannot be discharged unless he pays it to one lawfully authorized to receive it; and the party to whom he pays cannot be lawfully authorized to receive, except only in his representative character. If he is

authorized to receive in that character, why should he not be liable in that character?

Again, if a note had been taken by the factor, payable to himself, and after his death his administrator sued upon it in his representative capacity, and recovered the money; would he not be liable to the principal, in the same character in which he had, by the judgment of a Court recovered the money? It would be difficult to reconcile the contrary doctrine to any sound principles of reason, or to find any countenance for it in analogous cases.

We do not mean to say, that the principal may not, in such cases, resort to the administrator in his personal character, and charge him, de bonis propriis, with the amount thus received. We think he may take either course, at his election; but that whenever an executor or administrator, in his representative character, lawfully received money or property, he may be compelled to respond to the party entitled in that character; and shall not be permitted to throw it off after he has received the money, in order to defeat the plaintiff's action.

In this case, De Valengin was the bailee of the goods shipped by Duffy, and had a special property in them; and it was his duty to take all proper measures for their safety and preservation. He had a right to sell and transfer the goods in his own name, and as his own property. The Brazilian government, by agreeing to pay the money, admitted that the debt was justly due to him on account of the destruction of this cargo. Whether that government was deceived or not, is another question; and does not affect the point now to be decided. The admission of the debt as due to De Valengin, places this case upon the same principles with that of a factor before mentioned, who had sold the property of his principal in his own name, and died before the receipt of the money. If the administrator is lawfully entitled to receive it in his representative character, and does so receive it, he is liable, in the same character, to the party entitled. Neale prosecuted the claim, and received the money, as the administrator of De Valengin. He must account for it in the same character.

If this transaction had taken place before the act of Assembly of Maryland, of 1820, ch. 174, the suit must unquestionably have been continued against Neale's representatives, and could not have been sustained against the administrators de bonis non of De Valengin. Because the property which Neale had received as administrator was converted into money in his lifetime, and must therefore have been accounted for by his administrator, and would not have passed to the administrator de bonis non of the former intestate. But by the third section of the act of 1820, ch. 174, the administrator de bonis non, is entitled to the bonds, notes, accounts, and evidences of debt, which the deceased executor or administrator may have taken, and to the money in his hands in his representative character; and he is authorized to recover them in the manner there pointed out. And the money now in controversy being, as we have already said,

lawfully in the hands of Neale, in his representative character, the administrators de bonis non are entitled to it; and as they are authorized to recover the fund out of which the money due to Duffy is to be paid, he had a right to make them parties to the suit which he had instituted against the first administrator, and to continue it against them. They are not injured, or in any manner placed in danger by this proceeding. For they are not liable, unless the money is recovered from Neale's representatives or securities; provived there is no negligence or breach of duty on their part.

The motion in arrest of judgment offered in the Circuit Court, if it had not been objectionable upon other grounds, was evidently too late by the rules of the Court; and, on that account, properly overruled.

The judgment of the Circuit Court is therefore affirmed.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Maryland, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said Circuit Court, in this cause be, and the same is hereby, affirmed, with costs and damages, at the rate of six per centum per annum.