SAMUEL THURSTON, *Adm'r, versus* DAVID B. DOANE, *Adm'r.*

Where one, in his capacity of executor, had collected of the United States a sum of money, which had been paid under the treaty with Mexico, it was *held,* not to be new assets accruing and coming into his hands after the decease of his testator, but should be deemed to be the avails of a claim in the nature of a debt due to the testator at the time of his decease and afterwards collected through the medium of the government.

The remedy of a person alleging that he was interested with the testator in the claim to indemnity, and is entitled to a share of the money collected, is against the executor, in his capacity as such. So, too, if the money should be regarded as new assets.

Where the plaintiff *thus* brought his action, in which the statute of limitation prevented his recovering, and he afterwards commenced an action against the executor, but not in his representative character, claiming to recover of *him,* on the ground that the money was paid to him wrongfully and by mistake, — it was *held,* that having elected to enforce his demand against the executor, as such, and having full knowledge that he was prosecuting the claim as one due to his testator, and acquiesced therein; and knowing, too, that the executor had inventoried and accounted for the money as assets of the testator's estate, and did not object, he would thereby be estopped to recover, even if there were no other legal objections to his maintaining his action.

ASSUMPSIT, for money had and received.

The plaintiff is administrator of the estate of Henry Rider.

The defendant is administrator of John Wilkins' estate.

The plaintiff states his case as follows, and offers to prove the following facts:—That, in 1830, the plaintiff's intestate

and.one Samuel Lowder were owners of the schooner Topaz, Lowder owning by register three-fourths, and Rider one-fourth; William Lowder claiming to be owner or interested in one-third of the three-fourths owned by Samuel Lowder; that said Rider was master of said vessel during all the time she was navigated; that said master took and sailed said vessel during all said time on shares, by which contract the said master was to pay all expenses of said vessel, except port charges, including all wages, provisions and supplies, and his own services, according to the usual custom where such vessels are taken on shares, and to retain one-half of the gross earnings of said vessel under said contract to his own use, and to account and pay over the other half to the owners of said vessel, viz. :—said Samuel Lowder and himself, according to their several interests. That, after a voyage to Hayti and several voyages without returning to Bangor, the said vessel was seized with all and every thing on board of her, including freight money and other proceeds of her voyages, and confiscated, and said Rider murdered, by subjects of the Mexican government, in the early part of the year 1832. That plaintiff and said John Wilkins, who was then executor of the estate of said Samuel Lowder, as such executor, subsequently, in 1849, made and instituted separate memorials and claims before a commissioner appointed by the U. S. Government, under the Act of Congress of that year, to carry into effect the treaty with Mexico, claiming according to their several ownership in said vessel; viz. :—said Wilkins, executor, three-fourths, and said Thurston, plaintiff, one-fourth. That it was not shown to or before said commissioners or known by them, nor at that time or subsequently, until after the receipt of the money awarded as hereafter stated by the plaintiff, or any one interested in said Rider's estate, that said Rider had taken the said vessel on shares as aforesaid, or that there was any such contract, or that said Rider had any other interest or relation except as master employed, and as owner of the one-fourth of the vessel. That upon said memorials an award was made by said commissioners, allowing for all claims arising from

said wrongs to said vessel and all belonging or connected with it. That in said memorials the same items of claims were made in each, and were $4500 for the value of the schooner Topaz, and, in addition, certain definite sums for outfits and provisions, advance wages, insurance, freights, expenses, clothes, watches, wages of the crew, and some other items, as will appear from said memorials separately stated. That said commissioners made an award based on said memorials and said items of charge, and for all said claims allowed the sum of $21640,81, and the same was allowed and paid according to the ownership of said vessel, viz.,—three-fourths part to said Wilkins, as executor as aforesaid, and one-fourth to said plaintiff, in the month of May, 1851, (except one-third of the amount allowed to said Wilkins, which was detained in the U. S. Treasury to await action on the claim of Wm. Lowder to the same,) a portion of which money, so received by said Wilkins, was accounted for by him, as executor, in his life time, and the balance was paid over by the administrator of said Wilkins, after his decease, to the administrator *de bonis non* of said Samuel Lowder. The plaintiff claims to recover in this action that part of the money paid to said Wilkins as aforesaid, which was allowed for outfits, provisions, advance wages, clothes, watches and other valuables, and wages of crew, and all freight or freight money and earnings of the vessel, and all that he, said Rider, was entitled to receive on account of his said contract for sailing said vessel as aforesaid, of said money paid over to said Wilkins.

A suit was instituted, October 13, 1851, by plaintiff against said Wilkins, as executor of the estate of Samuel Lowder, and afterwards continued against Caroline R. Lowder, administratrix *de bonis non*, to recover of said estate the money claimed in this action, which action, it was decided, was barred by the statute of limitation.

Said Wilkins died in 1852. William Fessenden gave a bond as administrator on his estate; said bond is dated May 25, 1852, and approved by Probate Court on the last Tuesday

of June, 1852; and defendant has since been appointed administrator *de bonis non*, and gave bonds in November, 1855.

Plaintiff offers to prove that, soon after the receipt of the money by said Wilkins, he was informed by a person not interested in the matters, that it was probable that some claim would be made by said Rider's heirs or representatives for a portion of said money and he was advised ·by said person not to pay over all said money to said Lowder's estate, but to hold it to meet such a claim, if made and sustained.

If, upon proving the foregoing facts, or such parts as are legally admissible, the plaintiff would be entitled to recover any thing, the case is to stand for trial:—otherwise a nonsuit is to be entered.

This case was argued at July term, 1858, by

*Kent*, for plaintiff, and by

*Rowe & Bartlett*, and *A. W. Paine*, for defendant.

The opinion of the Court was drawn up by

RICE, J.—The facts offered to be proved in this case are substantially the same as were offered to be proved in the case of *Thurston* v. *Lowder*, 40 Maine, 197. In that case the attempt was to charge the administratrix, in her representative character, with the same money for which it is now attempted to charge the estate of Wilkins, who was the original executor on the estate of Samuel Lowder, and by whom the money in controversy was obtained for that estate.

The former action against the representative of Lowder's estate was defeated by the interposition of the statute of limitations. There was no suggestion that it was not brought against the proper person, or that, if the facts offered to be proved had been substantiated, the plaintiff would not have been entitled to prevail if his action had been seasonably commenced.

In that case this Court held, that the money collected under the Mexican commission, by the defendant's intestate, was

not to be deemed new assets in his hands, but rather in the nature of a debt due to the intestate Lowder, at the time of his decease, and afterwards collected through the medium of the government, and was to be treated as other assets of said intestate in the hands of his executor, in which the plaintiff, in his representative character, had an interest.

The decision of that case was fully supported by the case of *Foster* v. *Fifield*, 20 Pick., 67.

But suppose it were otherwise. Should the money collected by Wilkins, under the Mexican commission, be deemed new assets accruing and coming into his hands after the decease of Lowder, and for which no right of action accrued against Lowder in his life time, still the action would have been properly commenced against the representative of Lowder's estate, in his representative character.

In the case of *DeValengin's adm'r* v. *Duffy*, 14 Peters, 282, which is a case in its principal features closely resembling this, the Court says, "there are doubtless decisions which countenance the doctrine, that no action will lie against an executor or administrator, in his representative character, except upon some claim or demand which existed against the testator or intestate in his life time; and that, if the claim or demand wholly accrued in the time of the executor or administrator, he is liable therefor in his personal character. But, upon a full consideration of the nature, and of the various decisions on this subject, we are of opinion, that whatever property or money is lawfully recovered or received by the executor or administrator, after the death of his testator or intestate, in virtue of his representative character, he holds as assets of the estate; and he is liable therefor, in such representative character, to the party who has a good title thereto. In our judgment, this, upon principle, must be the true doctrine."

It is, however, contended that if this be so, an action will also lie against such executor or administrator, personally, and that the claimant may elect to seek his remedy against either person or both. How that might be under other cir-

cumstances, or as a purely abstract proposition, it is not necessary now to determine.

But in this case, after the plaintiff or his intestate has seen the defendant's intestate, acting in his representative character, institute a claim under the Mexican commission for the money now in controversy, and stood by and seen that claim thus successfully prosecuted, and the money collected and inventoried, and accounted for as a part of the assets of the estate of Lowder, not only without objection, but apparently with his concurrence and approbation; and when we further consider that Wilkins could not have obtained one dollar of that money in any other capacity than as representing the estate of Lowder; and after the plaintiff, with a full knowledge of all these facts, had instituted a suit against Wilkins, in his representative character, in which he failed only in consequence of his own laches, it is too late for him to hold the estate of Wilkins liable for the money thus collected and paid out, as for a personal liability. By well settled principles of law and equity he is estopped from so doing.

Nor does the offer to prove that soon after Wilkins received the money, he was informed, by a person not interested in the matters, that it was probable that some claim would be made by said Rider's heirs, or representatives, for a portion of said money, and that he was advised by said person not to pay over all said money to said Lowder's estate, but hold it to meet such claim, if made and sustained, change the aspect of the case. No fact seems to have been stated by this volunteer as a reason for his gratuitous advice. He had no interest in the matter, nor was he authorized to speak for those who were interested. Wilkins was not bound to observe or act upon idle unauthorized suggestions. He could not have done so without a violation of his duty to the estate which he represented.

According to the agreement of parties a nonsuit must be entered.

TENNEY, C. J., and CUTTING, and GOODENOW, JJ., concurred.