RUFUS F. HARRISON et al.

*v.*

ISAAC FLEISCHMAN et al.

[Decided November 1st, 1905.]

1. Where an executrix, chargeable with $2,850, invested the same in building and loan stock certificates, the association, issuing one certificate to her as executrix and another certificate to her individually, was charged with notice that the money paid for the first certificate was trust funds.

2. Where a building association was charged with notice that money paid for certain of its stock was trust funds of the estate of a decedent, such association was constructively guilty of a breach of trust in appropriating the money to its own use, entitling the estate to share· in· the association's assets as a creditor, and not as a stockholder.

3. Where an executrix invested ·money· belonging to the estate in stock of a building association, which the latter, with notice of the trust, appro-

priated to its own use, but on its insolvency the money so paid was not traced or identified, and it did not appear that it was still in its hands when it was adjudged insolvent, the estate is not a preferred creditor.

4. Where a stock certificate in a building association certified in the ordinary form that the holder was a stockholder, and contained a provision that the holder was entitled to interest on the amount paid at six per cent. per annum, and that the certificate might be surrendered at any time after three years on giving due notice, when he should receive the full amount paid, with interest, &c., the holder, prior to notice of surrender, was a stockholder, and not a creditor.

On bill, &c.

*Mr. Egbert J. Tamblyn,* for the complainant.

*Mr. Isaac Fleischman, pro se.*

*Mr. James S. Erwin,* for John J. Erwin.

*Mr. Frederick F. Guild,* for the receiver.

STEVENS, V. C.

This is a bill filed by sureties on a bond given by Sarah Parton, conditioned for the due administration of her first husband's estate. Its purpose is to compel the proper disposition of certain assets of that estate. These assets are alleged to be two certificates of stock of the Commercial Building and Loan Association, an insolvent corporation of which Mr. Frederick F. Guild is receiver. One of these certificates certifies that Sarah Parton, executrix, is constituted a stockholder of the association, and holds fourteen and one-quarter shares of the maturity value of $200 each. The other certifies that Sarah Parton is constituted a stockholder thereof, and holds three-quarters of a share of such value. The evidence is that Mrs. Parton paid in cash (by check of her attorney) $2,850 for the first certificate and $150 for the second. It appears from the final account, filed by her as executrix, and from the provisions of the will, that she was responsible as such to the amount of $2,908.24. She is, under the terms of the will, chargeable with no interest thereon. The evidence is that she invested trust funds to that amount in

the stock of the company. Consequently the first certificate represents nothing but trust funds, and the second certificate trust funds to the amount of $58.24. Under the decision in *Jeffray* v. *Towar,* 63 *N. J. Eq.* (*18 Dick.*) 530, it is clear that in issuing one certificate of stock to Mrs. Parton in her character of executrix, and another to her individually, the company was affected with notice of the fact that the money paid for the first certificate was trust money. *Duncan* v. *Jaudon, 15 Wall.* 165; *Shaw* v. *Spencer, 100 Mass. 389.* The company was constructively guilty of a breach of trust in appropriating such money to its own purposes, and the Gore estate has a claim which entitles it to share in the assets as a creditor. But the money paid in has not been traced or identified, and there is no reason to believe that it was still in the company's hands when it became or was adjudged to be insolvent. Besides, the trustee of the fund was not the company, but Mrs. Parton. Under these circumstances the Gore estate is not a preferred creditor. *Hunt* v. *Smith, 58 N. J. Eq.* (*13 Dick.*) 25, is inapplicable, and the case is ruled by *Collins* v. *Lewis, 60 N. J. Eq.* (*15 Dick.*) 488; *Matter of Cavin* v. *Gleason, 105 N. Y.* 256; *O'Callaghan's Case,* 64 *N. J. Eq.* (*19 Dick.*) 287.

With respect to the claim for $58.24, the situation is different. The evidence is insufficient to show that the company had notice that Mrs. Parton was investing trust moneys in the stock for which she obtained the certificate for three-quarters of a share. It is claimed, however, that this certificate is a money obligation of the company and not a stock certificate, properly so called. It certifies in the ordinary form that Mrs. Parton is a stockholder, and contains the following clause, stamped or printed in red ink upon its face:

"The holder of this certificate is entitled to interest upon the amount paid at the rate of six per cent. per annum, payable semi-annually. This certificate may be surrendered by the holder or called in by the association at any time after three years from the date hereof by giving due notice, when the holder hereof shall receive the full amount paid, together with interest due and unpaid to the date of said notice of surrender, under article IX. of the constitution and by-laws."

As the certificate was issued on June 7th, 1901, and the company went into the hands of a receiver in November, 1902, it is obvious that the notice of surrender could not have been given. If the certificate is to be regarded as a money obligation, it must be only because of the agreement to pay interest. In the case of a somewhat similar certificate, issued by the National Building, Loan and Provident Association, I held, in an unreported case, that such an agreement to pay interest did not, of itself, show that the relation of debtor and creditor existed as to the *corpus* of the fund. But each case must depend upon the language of the instrument sued on, and the question is whether, under the wording of this particular paper, Sarah Gore became, as to the principal sum paid ,by her, a stockholder or ·a creditor. The paper itself declares that she became a stockholder. The question then is, did the stipulation that the company would pay interest make her a creditor? The argument is that the agreement to pay interest is so inconsistent with the status of a stockholder that it cannot be supposed that it was the intention to constitute her a stockholder. But this supposition is made in the teeth of the express declaration that she was a stockholder. Looking at the whole paper, I think that the reasonable inference is that it was intended primarily to constitute her a stockholder, and secondarily to give her six per cent. interest on the amount paid in. From the fact that such an agreement might be regarded as unusual and anomalous, it does not follow that we are at liberty to remodel it and make another agreement out of it. The very language of the clause providing for notice is the strongest possible indication that the parties intended that the relationship of stockholder should subsist until that of creditor arose under the notice. Whether the agreement to pay six per cent. should be construed to mean six per cent. out of earnings I do not consider. Agreements stipulating for withdrawal are not unusual in the case of corporations of this kind (*End. Build. Asso. (2d ed.) § 109*), but the stockholder is not converted into a creditor until he complies with the conditions. The following cases illustrate the views here expressed: *Towle* v. *Association, 75 Fed. Rep. 938; Coltrane* v. *Blake, 113 Fed.*

*Rep. 785; Solomons* v. *American Building and Loan Association, 116 Fed. Rep. 676; Gibson* v. *Safety, &c., Association, 170 Ill. 44; 48 N. E. Rep. 580.* In *Guild* v. *Baker, 68 N. J. Eq. 61,* the lender of the money expressly refused to become a stockholder and took the assignment of the mortgage on the supposition that she was to be a creditor. It would have been highly inequitable to have deprived her of her security. I think, therefore, that, as to the second certificate, the present holders of it stand in the relation of stockholders.

I think that the receiver should pay what is due the Gore estate directly to the administrators of that estate.