ALICE M. BOYLE, APPELLEE, v. SAMUEL M. KNAUSS, ADMINISTRATOR OF PERCY H. BROWN, DECEASED, APPELLANT.

Submitted March 23, 1911—Decided June 15, 1911.

1. When goods are unlawfully detained by an administrator, who has come into possession of them from his intestate, in due course of administration, and claims title to them in the right of his intestate, a person seeking by replevin to recover them has his choice of action against the detainer personally, or of suing him in his representative capacity.

2. The rule has not been abrogated in this state which requires papers, having a subscribing witness, to be. proved by the testimony of such witness, or the witness's absence accounted for.

On appeal from the First District Court of Jersey City.

Before Justices GARRISON, PARKER and VOORHEES.

For the appellee, *McDermott & Enright.*

For the appellant, *Queen & Stout.*

The opinion of the court was delivered by

VOORHEES, J. This is an action of replevin for diamonds, judgment being rendered for the plaintiff, who was the assignee of one Mabel Austin, whose title to the diamonds was admitted. It appeared that Austin had loaned them to Brown, the defendant's intestate, in his lifetime, with permission to wear them until she should ask for their return. She did not request their return during Brown's lifetime. Upon Brown's death, the diamonds were found among his effects, were taken possession of by the defendant, as his administrator, who afterwards inventoried them as assets of the decendent's estate.

The title was assigned by a bill of sale, made by Austin to the plaintiff, after Brown's death. This paper, which had a

subscribing witness, was proved by the assignor, without the testimony of the subscribing witness, whose absence was not accounted for, and it was admitted in evidence, over objection.

One of the reasons assigned for reversal of the judgment is that an action of replevin may not be maintained against a defendant in his representative capacity.

The defendant's insistence is that no demand was made for the return of the diamonds upon the defendants' intestate, during his lifetime, consequently no tortious act was committed by the intestate, for which his estate would be rendered liable after his death. The demand was made upon the defendant, and if any tort resulted in the refusal to deliver possession of the chattels, such tort was committed by the defendant in his individual capacity, and the action therefore should have been brought against the defendant individually.

We are referred to the following language of Chief Justice Beasley, in *Hodge* v. *Coriell*, 15 *Vroom* 456:

"The defendant could not be sued in his representative capacity. The law does not admit of it, and it would therefore be singular so to interpret this record as to find in it that it must be excluded by legal rules."

"Even if the defendant should be personally insolvent, and the estate which he says he represents should be solvent, the plaintiff could not direct his remedy against either, but only against the former." *Affirmed,* 17 *Vroom* 354.

That case turned upon a question of evidence under the statute, as it then existed, preventing a party to a suit from testifying when the other party sues or is being sued in a representative capacity. It decided that "the statutory criterion is clear and definite, and it is that one or other of the litigants must appear upon the record as a party * * * in a representative capacity." That action had been brought against Coriell individually, and "the plaintiff asserted no claim against him in that (representative) capacity in his writ or declaration."

It appears that the quotation herein first set forth from the opinion of the learned Chief Justice in this case, was neither involved in nor necessary to a decision thereof.

Vice Chancellor Stevens, citing the case in *Kleb* v. *Kleb,* 4 *Robb.* 305, observed that it was rightly decided, and that "the wrongful act alleged was that of the defendant, not that of the defendant's intestate," but the learned Vice Chancellor made use of it upon a controversy concerning the admissibility of evidence under the same, or a similar statute.

It cannot be successfully maintained that the Hodge case is decisive of the question for which it has been cited by the defendant. Chief Justice Taney, in *De Valengin's Administrators* v. *Duffy,* 14 *Pet.* 282, has so clearly and comprehensively stated the rule that we cannot do better than quote from his opinion. He says:

"The second question is one of more nicety, and the cases are not entirely reconcilable to each other. There are, doubtless, decisions which countenance the doctrine that no action will lie against an executor or administrator, in his representative character, except upon some claim or demand which existed against the testator or intestate in his lifetime; and that if the claim or demand wholly accrued in the time of the executor or administrator, he is liable therefor, only in his personal character. But upon a full consideration of the nature, and of the various decisions on the subject, we are of opinion that whatever property or money is lawfully recovered or received by the executor or administrator, after the death of his testator or intestate in virtue of his representative character, he holds as assets of the estate; and he is liable therefor, in such representative character, to the party who has a good title thereto. In our judgment, this, upon principle, must be the true doctrine.

"In the case of a factor who sells the goods of his principal in his own name, upon a credit, and dies before the money is received, if it is afterwards paid to the administrator in his representative character, would not the creditor be entitled to consider it as assets in his hands, and to charge him in the same character in which he received it? The

want of knowledge, or the possession of knowledge on the part of the administrator, as to the rights or claims of other persons upon the money thus received, cannot alter the rights of the party to whom it is ultimately due. The debtor, that is to say, the party who purchased from the factor without any knowledge of the true owner, and who pays the money to the administrator under the belief that the goods belonged to the factor himself, is unquestionably discharged by this payment. Yet he cannot be discharged unless he pays it to one lawfully authorized to receive it; and the party to whom he pays cannot be lawfully authorized to receive, except only in his representative character. If he is authorized to receive in that character, why should he not be liable in that character?

"Again, if a note had been taken by the factor, payable to himself, and after his death his administrator sued upon it in his representative capacity, and recovered the money; would he not be liable to the principal, in the same character in which he had, by the judgment of a court, recovered the money? It would be difficult to reconcile the contrary doctrine to any sound principles of reason, or to find any countenance for it in analogous cases.

"We do not mean to say that the principal may not, in such cases, resort to the administrator in his personal character, and charge him, *de bonis propriis,* with the amount thus received. We think he may take either course, at his election; but that whenever an executor or administrator, in his representative character, lawfully received money or property, he may be compelled to respond to the party entitled in that character, and shall not be permitted to throw it off after he has received the money, in order to defeat the plaintiff's action."

This rule was followed in *Newcomb* v. *Burbank,* 146 *Fed. Rep.* 400, where other cases are collected. It seems to have the approval of reason, and is especially applicable to the facts of the present case in view of the changes made in the action of replevin by our statutory law.

At common law, the action of replevin could be maintained for an unlawful taking only, and until 1862, when the Replevin act was amended (*Pamph. L.* 1862, *p.* 111; *Gen. Stat., p.* 2771, § 2), such was the law of this state. *Bruen* v. *Ogden,* 6 *Halst.* 370; *Haythorn* v. *Rushforth,* 4 *Harr.* 160; *Harwood* v. *Smethurst,* 5 *Dutcher* 195. But now our statute extends this form of action to an unlawful detention, and with respect to an unlawful detention, it has been somewhat assimilated to an action of trover, in that there must be an actual conversion or a refusal to deliver, as indicative of the unlawfulness of the detention. *Woodside* v. *Adams,* 11 *Vroom* 417. It may be that when a taking was necessary to support the action, unless such taking was proved to have been done by the intestate, no action would lie against the representative.

Now, here, nothing unlawful was done by the intestate, but the property in question being found at the time of his death in his possession was rightfully appropriated by his legal representative.

It was placed in the usual course of administration in the inventory (*Orphans Court act, Pamph. L.* 1898, *p.* 735, §§ 58, 62), and thus became liable for the payment of intestate's debts, and thereafter to distribution by the administrator among the next of kin. *Orphans Court act,* §§ 168, 169. This was sufficient justification for the representative to retain the assets of the estate against the demand of every person who could not show a better title than his intestate, under whom the representative might avow. It seems clear that if the goods, while in the administrator's possession, had been purloined by a stranger, the administrator as such could have sued for their recovery in his representative capacity, and in such case, would necessarily have asserted the same title, as is by this action sought to be litigated by the plaintiff.

We conclude, therefore, that when goods are unlawfully detained by an administrator, who has come into possession of them from his intestate, in due course of administration. and claims title to them in the right of his intestate, a person

seeking by replevin to recover them, has his choice of action against the detainer personally, or of suing him in his representative capacity.

There was no error therefore in the action of the court below in retaining the case.

The next objection is that urged against the introduction in evidence of the assignment under the proof made of its execution as hereinbefore stated. The rule has not been abrogated in this state, which requires papers of that character, having a subscribing witness, to be proved by the testimony of such witness, or the witness's absence accounted for. *Williams* v. *Davis,* 1 *Penn.* 277; *Williamson* v. *Wright,* 2 *Id.* 984; *Hogland* v. *Sebring,* 1 *South.* 105; *Paterson* v. *Schenck,* 3 *Gr.* 434; *Corlies* v. *Van Note,* 1 *Harr.* 324; *Worman* v. *Seybert,* 49 *Vroom* 176.

It is true that Professor Wigmore holds that this is pedantic and obstinately technical, but I do not understand that he claims that the rule has been abrogated. 2 *Wigm. Ev.,* § 1299.

For this error, the judgment under review must be reversed, and a new trial granted.