320 F.2d 778
 Howard Jerome SMITH, Administrator, Estate of Dorothy E. Saunders, Deceased, and National Surety Corporation, Appellants,
v.
METROPOLITAN LIFE INSURANCE COMPANY, Appellee.
METROPOLITAN LIFE INSURANCE COMPANY, Appellant,
v.
NATIONAL SURETY CORPORATION, Appellee.
 No. 16947.
 No. 17171.
 United States Court of Appeals District of Columbia Circuit.
 Argued January 21, 1963.
 Decided July 3, 1963.
 
 Mr. Robert T. Smith, Washington, D. C., for appellants in No. 16947 and appellee in No. 17171.
 Mr. Henry H. Paige, Washington, D. C., with whom Messrs. Arthur P. Drury, John M. Lynham and John E. Powell, Washington, D.C., were on the brief, for appellee in No. 16947 and appellant in No. 17171.
 Before WILBUR K. MILLER, DANAHER and BASTIAN, Circuit Judges.
 DANAHER, Circuit Judge.
 
 
 1
 Appellant on April 11, 1958 was named administrator of the estate of his aunt, Dorothy E. Saunders, who died on March 21, 1958. He here attacks a judgment[1] in favor of the appellee permitting recovery of an overpayment in the sum of $1,000 from the appellant Smith as administrator and the National Surety Corporation as his surety. It is here argued that the appellee's claim "was never probated against the estate, and the administrator was not notified of said claim until long after the expiration of the publication against creditors[2] and several months after he had filed[3] the final account on the 20th day of February, 1959." Dorothy E. Saunders had been a federal employee, who at the time of her death was insured under a group policy issued by the appellee. According to the schedule of payments fixed by statute[4] the amount of life insurance available to Dorothy E. Saunders was $4,000. On July 30, 1958, the appellant as administrator filed a sworn inventory of money and debts due, listing unpaid compensation, $373.94, Civil Service retirement fund $1,571.78, and specifically, "Federal Employees' Group Life Insurance — $4,000."
 
 
 2
 The Immigration and Naturalization Service, employing agent of the appellant's decedent, issued an erroneous certificate in proper reliance upon which the appellee, on December 19, 1958, paid to the appellant as administrator the sum of $5,000. The Civil Service Commission's audit having disclosed the overpayment, the correcting certificate having been issued as of April 13, 1959, the appellee sought reimbursement of the sum of $1,000.[5]
 
 
 3
 As of July 1, 1959, appellant's counsel transmitted to the Probate Court the 1958 proof of publication against creditors, followed by a deposit of the cancelled vouchers, all dated August 6, 1958, and reflecting payment to the creditors of the deceased and a funeral bill of $1,053.70. Despite the various requests previously made by the appellee for reimbursement, the appellee's claim was not then or thereafter listed by the appellant or his counsel. The appellee was given no notice that the administrator had lodged a purported "final account" on which no action had yet been taken by the court. Instead, as late as September 17, 1959, the appellee again requested information "immediately" as to when "we may expect to receive the reimbursement of the sum of $1,000." Appellant's counsel replied under date of October 13, 1959 that he had taken up the matter with his client, the administrator, and would meet with him on October 22, 1959 to discuss "this matter." Counsel concluded "After I have had an opportunity to talk to him, I will advise you."[6]
 
 
 4
 The record contains no evidence of any such advices. On November 4, 1959, appellant filed a Finance Office nontaxable certificate dated October 29, 1959. Thereupon, on November 5, 1959, the administrator's "first and final account," the order recited, "being now presented for approval, the same is, after examination by the Court, approved and passed."
 
 
 5
 For more than six months, the appellant as administrator had known of the error[7] which led to the overpayment. He had ignored the repeated requests of appellee's counsel that appellee be reimbursed in the sum of $1,000. As late as the morning of November 5, 1959, on the face of his sworn account he was representing to the court that there was a "Balance for Distribution to Howard Jerome Smith, nephew" $5,069.57.[8]
 
 
 6
 It is obvious that when the District Court "approved" the final account, it had no notice of the overpayment. Even if we were to treat the amount in question as a debt or account "due to the deceased," as the original inventory had set forth, no supplemental inventory had been filed "promptly," as is required by D.C.Code § 18-405 (1961), to reflect receipt of assets not included in the original inventory. Nor had the administrator sought, as one entitled to the residue of the estate, to proceed under the special bond provisions of D.C.Code § 20-203 (1961). The allowance of the "final" account does not conclude the matter because of the circumstances shown and because the basis upon which the administrator received the proceeds of the insurance was already fixed by law.
 
 
 7
 Title 5 U.S.C. § 2093 (1958) provides in pertinent part:
 
 
 8
 "Any amount of group life insurance * * * in force on any employee at the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving * * * in the following order of precedence:
 
 
 9
 * * * * * *
 
 
 10
 "Fifth, if none of the above, to the duly appointed * * * administrator of the estate of such employee." (Emphasis supplied.)
 
 
 11
 The Government's own interest in the Federal Employees' Group Life Insurance program and in the maintenance of its integrity is clearly evident from the provisions running throughout Title 5 U.S.C., Chapter 24.
 
 
 12
 This appellant could not have received the proceeds of the decedent's insurance except upon his establishment of a "valid claim." He could not lawfully receive an amount greater than the $4,000 explicitly prescribed by the statute. 5 U.S.C. § 2092 (1958).
 
 
 13
 When, after prolonged frustration, the appellee finally went to court and filed its motion for judgment against the administrator and his surety, the appellee rested its claim on the ground that the administrator had breached the duties of his office. The appellant in his answer admitted that he had accepted the sum of $5,000 "as administrator of said estate," although he had sworn in his inventory that he was entitled to receive only $4,000. He sought to persuade the District Court, sitting as a probate court, that he had acted in good faith.[9]
 
 
 14
 Judgment was awarded to the appellee against the appellant as administrator of the Saunders estate and against National Surety Corporation as the surety on his administrator's bond authorizing recovery by the appellee of the sum of $1,000 with interest thereon at 6% per annum from May 1, 1959. Since the administrator here had unlawfully received $1,000 which had been paid to him solely in his capacity as administrator, he was not entitled officially to retain that sum. Other contentions advanced by the appellant do not affect the result.
 
 We find no error.[10]
 
 15
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 This proceeding is authorized by D.C. Code § 28-2403 (1961)
 
 
 [2]
 The Probate Court's file shows that the last publication against creditors had occurred in May, 1958, more than seven monthsbefore the appellee had paid the administrator's claim for the proceeds of his aunt's insurance.
 
 
 [3]
 More complete details will be set forth,infra, but appellee's claim was asserted only two months after the account was "filed." Actually, the administrator's account was not approved by the Probate Court until November 5, 1959.
 
 
 [4]
 5 U.S.C. § 2092 (1958)
 
 
 [5]
 Appellee, on April 22, 1959, promptly wrote, registered mail, explaining the circumstances and requesting reimbursement. The return receipt shows delivery April 23, 1959. Appellee wrote again May 25, 1959 and June 5, 1959, without result
 
 
 [6]
 On October 22, 1959, the Probate Court notified the appellant that the account had been pending since February 20, 1959 and "is still incomplete despite our numerous requests." The administrator was directed to give the matter immediate attention or "your delinquency will be reported to the Court."
 
 
 [7]
 In his statement of the case on brief, the appellant informed the court: "In April of 1961 [sic], Howard Jerome Smith was notified by the Metropolitan Life Insurance Company of an alleged [sic] overpayment to him, as administrator of the estate of Dorothy E. Saunders, in the amount of $1,000, on the life insurance policy on the decedent."
 
 
 [8]
 D.C.Code § 18-512 (1961) provides:
 "In no case shall an * * * administrator be allowed to retain for his own claim against the decedent, unless the same be passed by the probate court, and every such claim shall stand on an equal footing with other claims of the same nature." (Emphasis supplied.)
 
 
 [9]
 Cf. United States v. State Bank, 96 U.S. 30, 35, 24 L.Ed. 647 (1878) where the Court said: "An action will lie whenever the defendant has received money which is the property of plaintiff, and which the defendant is obliged by natural justice and equity to refund. The form of the indebtedness or the mode in which it was incurred is immaterial."
 That Howard Jerome Smith was administrator as well as sole distributee does not affect the result in the circumstances of this case. Clarke v. Rogers, 228 U.S. 534, 549, 33 S.Ct. 587, 57 L.Ed. 953 (1913).
 The Supreme Court has said in language sufficiently apt here:
 "[W]e are of opinion, that whatever property or money is lawfully recovered or received by the executor or administrator, after the death of his testator or intestate, in virtue of his representative character, he holds as assets of the estate; and he is liable therefor, in such representative character, to the party who has a good title thereto. In our judgment, this, upon principle, must be the true doctrine." De Valengin's Adm'rs v. Duffy, 14 Pet. 282, 39 U.S. 282, 290, 10 L.Ed. 457 (1840). And see generally, Tucker v. Brown, 20 Wash.2d 740, 150 P.2d 604, 663-664 (1944).
 
 
 [10]
 The appellee had moved to dismiss the purported appeal of National Surety Corporation which had not been named in the notice of appeal. Nearly a month after the time within which an appeal could have been taken, the trial judge decided that since the liability of National Surety Corporation was based solely upon its capacity as surety, the "notice of appeal" had been intended to include both the administrator and the surety. In view of the disposition we have made of the case we find it unnecessary to enter a definitive ruling dismissing the purported appeal on jurisdictional grounds. See Cook & Sons Equipment, Inc. v. Killen, 277 F.2d 607 (9 Cir. 1960); Schlink v. Chesapeake & O. Railway Co., 276 F.2d 116 (6 Cir. 1960). Case No. 17171 will become moot