# SUPREME COURT.

## FREDERICK L. VULTE, *et al.*, executor, agt. W. RANDOLPH MARTIN, executor.

Where by the will of the testator, his wife becomes entitled to the whole of his estate that may remain after payment of his debts. On a settlement of the accounts of the testator's executor. The *executors* of his wife (she having died subsequently) are *necessary parties.*

On such settlement the surrogate has power to ascertain the amount of the assets that passed into the hands of the executor, and the amount paid out by him upon the debts of the testator; and upon payment over to the legatees or next of kin whatever surplus of assets that might remain in his hands, he was entitled to a decree declaring such settlement to be final, and discharging him from the trust.

But such a settlement involves no question as to the state of the accounts between the estate of the legatees under the will, except *so far as may be necessary to* ascertain what should belong to each. In this case that inquiry cannot arise, as the wife took the whole estate, after payment of the debts.

Such a settlement involves no inquiry into the state of the accounts between the representatives of the wife and the executor of her husband, either in his character as executor or as trustee of the estate. As executor, he is charged with no duty in regard to the real estate, and his accounts as trustee under a deed of trust in the lifetime of his wife, cannot be adjusted on this final accounting, as executor or trustee. It is only when a trust is created by a last will, that the surrogate has power to settle a trustee's accounts.

Commissions can only be allowed upon receipts and *disbursements of money* belonging to the estate of the wife. The debt claimed by the executor against his testator cannot be allowed to him until its validity is legally established.

As to the claim of the executor to be allowed for debts of the estate, paid by him out of his own means, the only way he can be allowed for them is to treat him as assignee of such debts, in place of the original creditors.

*New York, General Term, February,* 1867.

*Before* G. G. BARNARD, *P. J.,* D. P. INGRAHAM, and JOSEPH MULLIN, *JJ.*

· THIS is an appeal from a decree of the surrogate of New York, made December 30th, 1865, upon the final accounting of D. R. Martin, as executor of the last will and testament of Oscar W. Sturtevant, deceased. By this decree it is

adjudged that the appellants (as executors of Sarah A. Sturtevant, deceased) pay to Martin, out of their estate, the amount alleged to have been advanced by him, as executor, in excess of what he received in that capacity, with interest and commissions upon his advances, and fees of auditor and surrogate—in all $5,301.53.

The appellants have had no accounting of their estate, and were parties to the proceeding only by reason of being cited to attend the final accounting of respondent, as the legal representatives of Sara A. Sturtevant, who was the devisee and residuary legatee of the personal estate of respondent's testator.

April 21st, 1855. Oscar W. Sturtevant (testator of respondent), and Sara A., his wife (testatrix of the appellants), being owners in fee of the house and lot, No. 47 Murray street, in New York, conveyed the same to said D. R. Martin. Contemporaneously, Martin delivered to Sturtevant a declaration of trust to the effect that the only object of the conveyance was to enable him (Martin) to borrow money for Sturtevant, secured by a mortgage upon the property, and that he "held the same in trust only for the use and benefit of said Oscar W. Sturtevant, his heirs," &c., and that he had no beneficial interest therein, except what might arise from the circumstance mentioned. He, thereupon, covenanted to reconvey the premises to Sturtevant whenever the mortgage should be satisfied.

On the 30th of April, 1855, Oscar W. Sturtevant died, leaving a will, wherein he devised and bequeathed all his estate, real and personal, to his wife (Sara A.,) and appointed her executrix, and D. R. Martin executor. Mrs. Sturtevant never qualified, and Martin having qualified, he became sole executor. During the lifetime of O. W. Sturtevant, Martin never claimed or exercised any authority to intermeddle with the house in Murray street, or the rents thereof. After the death of O. W. Sturtevant, it was assumed by Martin that the claims of Sturtevant's creditors

were largely in excess of his personal estate. The testator died possessed of a lot of office furniture, and some valuable law books, worth about $500, of which the executor neglected to take possession, and a diamond ring, worth $500, which he claims a right to keep as his own, and some other quite valuable personal property. Immediately after the death of Oscar W. Sturtevant, Martin, acting as his executor, assumed the authority, in that capacity, and without authority from Mrs. Sturtevant, or the surrogate, to lease the Murray street property, and collect the rents thereof, and pay therewith, as matter of legal right, divers debts of Sturtevant's estate, and also to retain a portion thereof towards a debt of his own. All these receipts of moneys from this real estate, he treated as belonging to him as executor of O. W. Sturtevant, deceased, and has intermingled them as inextricably with the personal estate of Oscar W. Sturtevant, as if the land had been actually devised to him as such executor, as trustee to pay debts, whereas, in fact, he took nothing under the will beyond the naked personal estate.

On the 26th day of May, 1863, Martin executed a conveyance of the house and lot, No. 147 Murray street, to Mrs. Sara A. Sturtevant.

On the 10th of January, 1865, Mrs. Sara A. Sturtevant (the testatrix of the appellants), died, leaving a will, and appointing the appellants her executors.

On the 11th of February, 1865, Martin filed his petition before the surrogate for a final accounting ; thereupon his accounts were filed, mingling the rents and expenses of the Murray street property with his accounts of the personal estate of the testator, and a partial proceeding in the matter was had, which was afterwards abandoned for want of proper parties.

On the 13th of July, 1865, letters testamentary were issued to these appellants, as executors of the will of Sara A. Sturtevant, deceased.

On the 15th of July, 1865, Martin again filed his petition

for a final accounting, and citation was issued to appellants, as "persons interested in the estate of Oscar W. Sturtevant, deceased," "to attend the final settlement of the account of the proceedings" of Martin, as executor, as aforesaid.

On the 3d of August, 1865, the appellants appeared and filed various exceptions to the accounts of Martin, as executor, as aforesaid, both because he had not charged himself with some valuable personal property belonging to the estate of O. W. Sturtevant, deceased, and because he had included in his accounts matters relating to real estate, with which, as executor, he had nothing to do.    On the same day the surrogate ordered the account referred to Thomas Lawrence, Esq., as auditor, for examination.

On the 13th of December, 1865, the auditor filed his report with the surrogate, substantially approving his accounts.

On the 13th of December, 1865, the appellants filed exceptions to this report.

On the 39th of December, 1865, the decree now appealed from was made by the surrogate, wherein he not only assumed jurisdiction to pass upon Martin's accounts concerning the real estate (both before and after the land was conveyed by deed to Mrs. Sturtevant), but he decreed that these appellants should pay Martin, as executor, the sum of $999.62-100 interest upon moneys alleged to have been advanced by him, and about $3,000, alleged to have been advanced by him towards payment of his own debt, and upwards of $1,000, commissions upon the rents of the real estate aforesaid; and also $250, fees of the auditor, and reserved the question of counsel fees.

ALBERT MATHEWS, *for appellant.*

*First.*—The decree of the surrogate was erroneous in directing these appellants to pay anything out, out of the estate of Sara A. Sturtevant to the respondent.    The decree

was made within six months after their appointment. They have not yet ascertained the debts or assets of their estate. They were not parties to this accounting for any such purpose. This was not a proceeding against their estate. The surrogate had no jurisdiction to make the decree against them (2 *R. S.* 95, §§ 70–71, *and* 94, § 65).

*Second.*—The surrogate had no authority to decree that the auditor's fees ($250), should be paid out of the estate of Sara A. Sturtevant. The statute authorized them to be allowed only out of the estate of Oscar W. Sturtevant, deceased (2 *Rev. Stat.,* 94, § 64).

*Third.*—The decree was erroneous in respect to the executor's commissions. The personal estate of Oscar W. Sturtevant was claimed to be largely insolvent. This personal estate was all that ever came to the hands of the respondent, in his capacity of executor. Obviously, any commissions upon this estate as accounted for, were trivial. The surrogate had no authority to allow $1014 81-100 commissions to the respondent, either upon his own money, which he claims to have advanced to pay debts of deceased, or upon the rents of real estate he collected, or moneys he claims to have paid upon Mrs. Sturtevant's real estate in Barclay street, or much less, upon the moneys he claims to have advanced to pay his own alleged demand of upwards of $5,000. Commissions were predicable only of money of the particular personal estate received and disbursed as executor (2 *Rev. Stat.,* 93, § 58).

*Fourth.*—The surrogate had no jurisdiction to settle the accounts of Martin concerning his personal and unofficial dealings with Mrs. Stuatevant's real estate in Barclay street, and elsewhere, which she received as devisee of her husband. All these items relating to these matters must be expurgated from the accounts, and it is necessaay the decree be reversed and the accounting referred back, with directions to omit them altogether

I. By the deed, mortgage and declaration of trust, con-

cerning the Barclay street property, Martin had no interest in the Barclay street lot, in any capaoity. If the trust were valid, it only gave authority to execute the mortgage, and ceased when that was done (*Selden* agt. *Vermilyea*, 3 *N. Y. Rep.*, 516). But the trust was void; and in any event, the land vested in Mr. Sturtevant, and was devised to his wife by him, subject only to the mortgage (1 *Rev. Stat.*, 727–8–30, §§ 45, 47, 49, 67; *Bellinger* agt. *Schaefer*, 2 *Sand Ch.* 293; *Rawson* agt. *Lampman*, 5 *N. Y.* (1 *Seld.*) 460).

II. This accounting of rents of real estate, is *coram non judice*, and void, and benefits nobody, and settles nothing. The dealings between Mrs. Sturtevant and Mr. Martin concerning the real estate, whether resulting from a fraudulent assumption of authority, or an ignorant mistake, were clearly immaterial upon an accounting of Martin as executor of Oscar W. Sturtevant under the will, which limited his power and authority to the personal estate of his testator. It is immaterial that he paid debts of his testator, in his own wrong, out of Mrs. Sturtevant's money. Nor could the surrogate adjudicate upon any equities that might arise in his favor, (if he acted honestly), by reason of the money thus applied being the income of real estate devised to her by his testator. The surrogate being an officer of limited jurisdiction, could not lawfully assume the plenary powers of a Court of Equity in the premises. *Cleveland* agt. *Whiton*, 31 *Barb. R.*, 544.

III. But, if there were any question as to the matters above stated, at least Martin's authority to intermeddle with the real estate ceased when he executed to Mrs. Sturtevant the deed of conveyance thereof, in May, 1863, and all items relating thereto subsequent to that date should be stricken from the accounts.

IV. If Martin as executor had wished to subject this real estate to the payment of the debt of his testator and so embrace it in his accounts, he might have applied (within the lifetime of Mrs. Sturtevant), to the surrogate (upon filing

an inventory of the estate, and proving the debts he ' now alleges), for authority to lease the real estate aforesaid for that purpose. ·He preferred to file no inventory, but to keep all knowledge of the assets of the estate to himself, and assume authority to control Mrs. Sturtevant's real estate and to wait until death had sealed her lips, before rendering any account or making any claim. He should· therefore be now left to his strict legal . rights. (2 *Rev. Stat.*, 99, §§ 1 to 17.

*Fifth.*—The decree is untrue in adjudging that any uncollected assets or evidences of indebtedness . were delivered over to these appellants.

*Sixth.*—The decree is erroneous in adjudging there is due the respondent either $4,006 22-100 or $5,301 58-100 from the estate of the testatrix of these appellants.

GILBERT DEAN, *for respondent.*

*By the court,* MULLIN, *J.*—By the will of O. W. Sturtevant, his wife became entitled to the whole of his estate that should remain after paying his debts.

On a settlement of the accounts of O. W. Sturtevant's executor, the executors of Mrs. S. were necessary parties. On such settlement the surrogate had power to ascertain the amount of the assets that passed into the hands of the executor, and the amount paid out by him upon the debts of the testator. And upon payment over to the legatees or next of kin whatever surplus of assets that might remain in his hands, he was entitled to a decree declaring such settlement to be final, and· discharging him from the trust.

It is quite obvious that such a settlement involved no question as to the state of the accounts between the estate of the legatees under the will, except so far as may be necessary to ascertain what share of the assets belonged to each. In this case even that inquiry cannot arise, as Mrs. S. took the whole estate, after the payment of the debts.

It is equally clear that such a settlement involved no

inquiry into the state of the accounts between the representatives of Mrs. S. and the executor of her husband, either in his character as executor, or as trustee of the estate. As executor, he was charged with no duty in regard to the real estate, and his accounts as trustee under a deed of trust in the lifetime of Mrs. Sturtevant could not be adjusted on this final accounting, as executor or trustee. It is only when a trust is created by a last will that the surrogate has power to settle a trustee's accounts.

If I am right in this, the decree must be reversed, and another accounting had, upon which the account in relation to the rents and taxes, &c., of the real estate must be excluded.

Commissions can only be allowed upon receipts and disbursements of money belonging to the estate of Mrs. Sturtevant.

The debt claimed by the defendant against his testator cannot be allowed to the defendant until its validity is legally established.

It is provided by § 37 of the 2d title, 3d chapter 6, of second part of revised statutes, that such debts may be proved to, and allowed by the surrogate.

The surrogate's court then has jurisdiction to try the validity of the executor's claim. I shall not express any opinion as to whether or not the debt claimed by the defendant is barred by the statute of limitations. That question will properly arise when it is considered by the surrogate.

As to the claim of the defendant to be allowed for debts of the estate paid by him out of his means, the only way he can be allowed for them is to treat him as assignee of such debts, and to allow him the share to which such debts would be entitled, had they remained in the hands of the original creditors.

The decree of the surrogate is reversed, and proceedings remitted to the court below, with directions that another accounting be had.

INGRAHAM, J., concurring.