WESTCHESTER COUNTY—HON. OWEN T. COFFIN,
SURROGATE—NOV., 1885; *again* May, 1886.

## MATTER OF COLLYER.

*In the matter of the judicial settlement of the account
of CHARLES S. COLLYER, as administrator of the
estate of ELIZABETH COLLYER, deceased.*

The administrator of decedent's estate included in his inventory, and pro-
posed to account for, as assets of that estate, seven items consisting of
sums deposited in savings banks, and entered upon the pass books as
follows :
" Bank Book No. ——, ————— Bank, in account with ". (dece-
dent) " in trust for A. B. . . . . . . $ ————." The *cestuis que
trustent* were not parties to the accounting proceeding, and did not ask
leave to intervene, but an attorney in their behalf filed objections, of
which the purport was a contention that those sums were not assets,
and that the court had no jurisdiction to try and determine the ques-
tion of the validity of the trusts.—

*Held,* that, the parties in interest not being before the court, their rights
could not be adjudicated ; that, for the same reason, the objections,
as such, must be disregarded; but that, the court having received notice
of the claims, the decree should direct the administrator to retain funds
to meet the exigencies of any actions which might be brought and
prosecuted in a proper forum.

In the same matter, the inventory and account presented a similar item of
deposit, in trust for G., a party to the special proceeding, and one of
decedent's next of kin, who was not aware of the existence of the de-
posit until after decedent's death, and in whose behalf similar objec-
tions were interposed.—*Held,*

1. That the court had jurisdiction to try and determine the question of the
validity of the trust, since, without such determination, the amount of
the distributive share of each of the next of kin could not be fixed as
required by statute (Code Civ. Pro., § 2743).

2. That such deposit *prima facie* created a trust in favor of the specified
beneficiary, the presumption becoming conclusive by reason of the ab-
sence of proof of contemporaneous circumstances sufficient to change
the character of the transaction.

3. That, decedent having been shown to have ceased, after a certain period,

to draw interest on the deposit, she must be deemed to have abandoned the subsequently accruing interest to the donee of the principal.

*It seems,* that, where such a deposit is made, and the depositor draws interest from the first, continuously, as it accrues, during life, it is manifested that the original intention was to become trustee of the principal of the fund only.

Dubois v. Brown, 1 *Dem.,* 317—adhered to ; Martin v. Funk, 75 *N. Y.,* 134 ; Mabie v. Bailey, 95 *id.,* 266—followed.

IT appeared, from the account filed in this matter, that the administrator included, among the assets for which he proposed to account, the amounts contained in several savings bank pass books, which were entered upon those pass books as follows :

" Bank book No. 449.056, Bowery Savings Bank in account with Elizabeth Collyer, in trust for Willie Beckwith. $819.09."

There were six other items of similar pass books of several savings banks, with different sums " in account with Elizabeth Collyer, in trust " for six other Beckwith children, who were nephews and nieces of the decedent, and one other such item in favor of William S. Beckwith, her brother in law. These items were objected to, as not being assets of the estate, but as held by the administrator as trustee for the several nephews and nieces, and the brother in law, named in the books, respectively, and it was contended that this court had no jurisdiction to try and determine the question of the validity of such trusts.

DENNIS MCMAHON, *for Geo. B. Collyer :*

Cited Martin v. Funk (75 *N. Y.,* 134) ; Mabie v. Bailey (95 *id.,* 206).

ABRAM B. HAVENS, *and* HENRY L. COLLYER, *for Wm. A. Collyer and others, next of kin, and the Beckwiths.*

SEAMAN MILLER, *and* E. WELLS, *for administrator.*

THE SURROGATE.—Mrs. Beckwith is a sister of the intestate, and the mother of Willie Beckwith and the other children, for whom the alleged trusts were created. She is a party to this proceeding, but her children and her husband are not. Hence this court has no jurisdiction over them. They have not asked leave to intervene and be made parties. They have, through their attorney, filed some objections to the account, but, as objections, they must be disregarded, while they may be considered as a notice of their respective claims, and may be deemed sufficient to warrant a direction in the decree, to the administrator, to retain a proper sum to meet the exigencies of any actions, brought in a proper forum, for the recovery of such claims.

Those items, therefore, must be considered as stricken from the account.

---

THERE also appeared, in the account of the administrator, as a charge against him in the amount of the inventory, an item which was thus stated in the latter :

"Elizabeth Collyer in trust for George B. Collyer, Bowery Savings Bank book, No. 329,357; amount, with interest, to Jan. 1, 1883, $2,589.84."

The entry on the pass book was as follows :

"Jan. 18, 1870, Elizabeth Collyer in trust for George B. Collyer, $2,000."

George B. Collyer, one of the next of kin of decedent, contended that the amount of such deposit and interest belonged to him, and objected that the same

did not belong to the estate of the decedent, and was not subject to distribution on this accounting. Thereupon evidence was taken, touching the ownership of the same. The most material facts were that the decedent and said George were brother and sister, both single, then and for a long time prior thereto residing together, and that, on the same day on which said deposit was so made, the decedent deposited a like sum in her own name, and that the savings bank paid the highest rate of interest (6 per cent ) on $2,000 and under, and 5 per cent. on sums over that amount. The like deposits of small sums of money in savings banks, in her own name, in trust for several nephews and nieces, above mentioned, were made by decedent at about the same time. George had no knowledge of the deposit in trust for him until after her death.

THE SURROGATE.—It was objected, on behalf of George B. Collyer, at the commencement of this controversy, that this court had no jurisdiction to try and determine the question as to the validity of the alleged trust; but as it was considered that the amount of the distributive share of each next of kin could not be fixed by the decree as required by statute, without such determination, the objection was overruled. The transaction is not in the nature of a claim of a creditor against the decedent, but rather resembles the case of a gift *causa mortis* (Fowler v. Lockwood 3 *Redf.*, 465). If there was a valid trust, it only terminated with the death of its creator. I had occasion to discuss the power of Surrogates' courts on this subject in DuBois v. Brown (1 *Dem.*, 317).

The administrator, in his account, charges himself with the amount of the deposit in question, and were it not for the objection interposed by George B. Collyer, who insists that it belongs to him and not to the estate, it would be distributed among the next of kin. The next of kin, other than he, also insist that it belongs to the estate. Under the authorities cited, there can be no doubt it is not to be regarded as a part of the assets of the intestate. The facts in the case of Martin v. Funk (75 *N. Y.*, 134) were very similar to those existing here. The entry in the pass book was of the same character and in the same form, and it was held that a valid trust was created. These facts, in addition, appear here, to wit, that sums of $2,000 and under, drew interest at the rate of 6 per cent., while sums in excess of that amount, only 5 per cent.; that the deceased had $4,000 to deposit at the same time, one half of which she deposited to her individual credit, and the other half to her credit in trust for her brother. But these circumstances cannot, of themselves, be regarded as sufficient to change the character which the law stamps upon the act. They do not show that she did not intend to create a trust for the benefit of her brother George. The case of Mabie v. Bailey (95 *N. Y.*, 206) fully sustains the doctrine laid down in the former. Such a deposit as was made in this case, *prima facie* creates a trust, and is conclusive upon the subject, unless contemporaneous facts and circumstances are shown, which would be sufficient to change the character of the transaction. This is precisely what the court seemed to have held in Mabie v. Bailey. An oppor-

tunity was afforded here, to show such facts and circumstances, and as none were established, with perhaps a single exception, to which reference will be briefly made, the sum in question, with certain interest, must be excluded from the calculation in making distribution.

It seems that the decedent drew the interest on the trust deposit, the first time it became payable, and for several years consecutively. The interest so drawn out is not here claimed by the *cestui que trust*, and therefore no question is raised upon that subject; but I am inclined to think that, had she continued to draw such interest from the commencement down to the time of her death, that very fact, regarded as a part of the *res gestæ*, would indicate that she intended to constitute herself trustee of the principal fund only. Of course, she could not have drawn the interest at the time she made the deposit, but she availed herself of the very first opportunity to do so, and the act might fairly be considered as relating back to and characterizing the original intention in making the deposit, and the fact of her continuing to draw it regularly during her life, would tend to strengthen the idea. Here, however, she ceased for several years to receive it, and the fair inference from that omission is that she intended to abandon it to her said brother from that period.

The decree of distribution will be prepared accordingly.