## *In re* GEORGE'S ESTATE.

*(Surrogate's Court, Cayuga County. January 16, 1889.)*

1. TRUSTS—EXPRESS TRUSTS—DEPOSIT OF MONEY AS TRUSTEE.

Testatrix, many years before her death, opened accounts at a savings bank in her sons' names, but without their knowledge. She added to and drew from them, sending most of the funds drawn to one of her sons. Subsequently, upon the refusal of the bank to honor her checks, the books were changed, without erasing the sons' names, so as to make the funds payable to her order; she saying that at her death she wished the money to go directly to them. About two months before her death she gave checks to her sister, who was named executrix of her will, upon which all the funds were drawn and given to testatrix, who soon after redelivered them to her sister, and the latter deposited them to their joint credit, payable to the order of either. After testatrix's death the executrix drew them in her individual name. The will gave to one of the sons all the money of testatrix in the bank, payable to him at discretion of the executrix. The latter testified that testatrix said, when she gave her the checks, that the money was for her, (the executrix;) that it would not do for her surviving son to know of it, he being so improvident; and that she would not leave it with her husband, as he would not be troubled with it. *Held*, that the deposits constituted a complete and irrevocable trust for the sons, testatrix being thereafter only their trustee, and that the delivery of the funds to the executrix was not intended as an absolute gift to her, but was a trust fund for the sons' benefit.

2. SAME—VALIDITY—SETTLEMENT OF EXECUTOR'S ACCOUNTS.

Under Code Civil Proc. N. Y. § 2743, providing that where an account is judicially settled, and any part of the estate is ready for distribution, the decree must direct payment thereof to the person entitled thereto, upon an accounting of said executrix before the surrogate, the validity of the trust for the benefit of said sons, and of the claim of the executrix to the fund as a gift, can be adjudicated.

Petition by Jennie E. Pearson, executrix, etc., of Harriet Pearson George, deceased, for a settlement of her accounts. Exceptions were filed by legatees under the will.

*H. V. Howland,* for the executrix. *S. E. Payne* and *E. C. Aiken,* for Charles L. George and Noyes P. Jenness, legatees. *John M. Brainard,* special guardian.

TELLER, S. The above-named executrix filed her petition in February, 1888, asking the judicial settlement of her accounts, and to that end that all persons interested in the estate of the decedent be cited to attend such settlement. The parties so cited were the husband of the decedent, her son by a former marriage, and three infant grandchildren, the descendants of a deceased son. Letters testamentary were issue to the petitioner July 29, 1886, the same. month in which the will of the decedent was admitted to probate in this court. The will is dated December 29, 1882. It contains directions as to funeral, numerous specific legacies of clothing, jewelry, books, and other small articles, a very large number of which are to the executrix. It is stated that these things are given to her "because she is the only one who has been kind to Noyes,"—meaning the son of the testatrix. The third clause of the will reads: "Noyes P. Jenness,—all my moneys in the Auburn Savings Bank to be given him at my sister Jennie E. Pearson's discretion." A few books and household articles are given Noyes. A gold watch and chain and bead watch-case are given to the granddaughter, Ella Jenness. No other provision is. made for the grandchildren, except in the thirteenth clause, which is: "Noyes, Ellie, Georgie, Charlie, and Jennie, contents of little fur trunk;" and in the sixteenth clause: "Three boxes of handkerchiefs for Jennie, to dispose of between. Noyes, Ellie, Georgie, and herself." The only provision in the will in favor of the testator's husband is a legacy of furs, satin dolman, and jet jewelry, "to be disposed of among his friends," and a pair of opera-glasses. An inventory was filed November 20, 1886, made up of books, furniture, jewelry, and clothing, amounting to $86.80.

In the account the executrix charges herself with the amount of the inven-

tory, and with money received from bank, $212.25, and credits herself with having disposed of the inventoried property in accordance with the terms of the will, and with having paid bills to the amount of $228. A long list of articles is set forth, with the statement that they remained in the house, and were claimed and taken by the decedent's husband. In the account it is stated that a portion of the goods mentioned in the will, including the watch and chain bequeathed to Ella Jenness, were given away by the testatrix in her life-time. Objections to the account were filed by Noyes P. Jenness and decedent's husband, alleging that assets not included in the inventory have come into the hands of the executrix, to the amount of about $3,600; that, of the amount, $212 was a gift *causa mortis* from the testatrix to her husband, and had been delivered to the petitioner for him, and the balance was held by the testatrix at her decease in trust for her son Noyes, and the representatives of her deceased son, Joseph Kendall Jenness. The executrix claims that the testatrix gave to her, in December, 1884, the sum of $336, and afterwards the further sum of $40.

The accounting involves the determination of the adverse claim to this money; to the $212 alleged to have been given to the husband of the testatrix; and the watch and chain mentioned in the will as a legacy to the grandchild. The proof shows that in 1864 the testatrix opened an account with the Auburn Savings Institution in the name of her son Noyes P. Jenness. The money was soon drawn out and account balanced. On the 21st of May, 1867, a deposit of $800 was made to the credit of the same party. Other credits were made, and cash deposited, and interest credited, until January, 1878, when the total amount to Noyes' credit was $1,567.13. Credits of interest were entered in the book semi-annually, until June 30, 1884, and from January, 1878, to January, 1881, money to the amount of $500 was drawn out by Mrs. George, and it appears that all or most of it was sent by her to Noyes. According to the evidence, Noyes, on account of waywardness and improvidence, was considered by his mother to be incapable of taking care of money, and he was not made acquainted with the fact of the deposits until after his mother's death. On the 15th of October, 1867, Mrs. George opened an account at the same bank, in the name of her son Joseph K., which, with the deposits and accumulated interest, amounted in January, 1882, to $2,104. No part of these deposits was drawn out of the bank until January, 1882, when $50 was drawn. The same amount was drawn out in August of that year, and $100 in January, 1884. At the time of drawing the $100 from the first account in January, 1878, the treasurer of the savings bank refused to pay any money to Mrs. George, unless there was something in the book to show she had the right to draw it. She said she wanted the boys' names in the book, so that in case of her death the money would go directly to them. It was then suggested by the treasurer, and agreed to, that, without erasing either of the names, there should be added the words, "To the order of Mrs. C. L. George." This was then done in both books, under the names of the boys, respectively. On the 12th day of December, 1884, the testatrix signed a check, written by the executrix, in these words: "*Auburn Savings Bank:* Pay to Mrs. I. E. Pearson all moneys belonging to N. P. Jenness;" also a check in these words: "*Auburn Savings Bank:* Pay to Mrs. Isaac E. Pearson all money remaining in bank belonging to Joseph K. Jenness." Upon the following day, the executrix received from the bank upon the first-named check the sum of $1,513.96, and upon the other the sum of $2,073.59. Of the amount, $3,500 was paid by the bank in checks, payable to Hattie P. George or bearer, and the balance was paid to her in money. The checks were cashed, and the proceeds, with the money received from the savings bank, delivered by the executrix to Mrs. George. On the 18th day of December, 1884, $460 of the money was deposited in the National Bank of Auburn to the credit of Harriet Pearson George and Mary J. Pear-

son, payable to either of them. A new certificate for $500 was taken by the executrix in her name, March 27, 1885, and the other indorsed by her and surrendered. She says the $40 which made the even amount, Mrs. George had taken from the money drawn from the savings bank. In about two weeks after the money was drawn from the savings bank, Mrs. George delivered $2,900 of the proceeds to the executrix, who, on the 2d day of January, 1885, deposited it in the banking-house of William H. Seward & Co., of the city of Auburn, taking a certificate of deposit therefor in the name of Mrs. Harriet Pearson George and Mary Jane Pearson, payable to the order of either of them, with interest if left three months.

Mrs. George died on the 17th day of February, 1885. On the 1st day of July, 1885, the executrix indorsed the certificate in her individual name, presented it at the bank, received thereon $1,000 and the interest, and took a new certificate for $1,900 in the names of Mrs. Harriet Pearson George and Mary Jane Pearson, payable as before. On January 4, 1886, this certificate was indorsed by her and surrendered, and another certificate for the same amount taken, payable as the preceding ones were. This has since been canceled, and the proceeds drawn by the executrix. The balance of the money received by the decedent was given away or disposed of in some way by her, and none of it appears to have come into the hands of the executrix, except what is accounted for, or was paid to the decedent's husband. The testatrix asked the executrix, upon certain conditions, to give the doctor (her husband) $200, and told her to tell him it was Noyes' money. It is testified by the executrix that, at the time the $2,900 was delivered to her, Mrs. George said: "Jennie, dear, that is for you, * * * for who has been so kind a friend to Noyes and me as you." "She said she had tested my friendship, and knew I had a mother's heart, and asked me if I would be a mother to him. I said the money belonged to him. I said, when she handed me the money, 'This is for Noyes.' She said, 'No, no, no.' She said at one time she had the bounty money during the war, and she had no peace until he spent it all. She said it would never do to let him know there was a penny, and she asked me to promise not to let any one know that there was any money, not even Isaac. I asked her if I should let the doctor (her husband) know. She said, 'I can't leave this with the doctor. Jennie, you know I could never ask him to do anything, for he wouldn't be troubled with this.' She spoke about the bounty money. She had no peace as long as there was any of it left. I took the money home with me." From this transaction the executrix claims she became the absolute owner of the $3,400 deposited in the two banks by virtue of a gift *inter vivos* from the testatrix. It is contended upon the other side that the beneficial interest in these moneys passed to the sons of the decedent when she deposited the same to their credit, and that she thereafter was merely a trustee for them, and had no power to dispose of the money in violation of the trust.

The transfer of property by a declaration of trust depends upon the same facts that are necessary to create a valid gift *inter vivos*, except it is not essential that the property should be delivered to the *cestui que trust*, or that he should be informed of the trust. The donor or creator of the trust must have relinquished all ownership of the property. He must have absolutely parted with the beneficial interest. If he reserved any control of the property, it can only be as trustee or representative of the *cestui que trust*. The case of *Martin* v. *Funk*, 75 N. Y. 134, is a leading one upon this subject. S. deposited in the savings bank two sums of money belonging to her, declaring that she wanted the accounts to be in trust for M. and K., who were sisters. S. retained the pass-book, and the money remained in the bank, with its accumulated interest, until the death of S., except she drew out one year's interest. It was held that the transaction was a valid declaration of trust; that the title to the deposits passed to M. and K.; and that S. constituted herself

trustee, and held the books as such, although M. and K. had no knowledge of the transfer. In the case of *Willis* v. *Smyth*, 91 N. Y. 297, it was held that depositing a sum of money in the savings bank to the credit of the depositor in trust for her daughter entitled the latter to the fund, although one such deposit had been drawn out by the mother, and she had received interest upon the account. In the case of *Mabie* v. *Bailey*, 95 N. Y. 206, it was held that the deposit of money in a bank to the credit of the depositor as trustee for another is *prima facie* evidence of an intent to transfer the beneficial interest in the fund. It was intimated that "surrounding circumstances might be shown to vary or explain the apparent character of the acts and intent with which they were done," which was left undecided by the case of *Martin* v. *Funk*, *supra*. In the case of *Barker* v. *Harbeck*, 2 N. Y. Supp. 425, it was proven that the defendant's testatrix, Elvira Harbeck, in 1859, deposited with the Bowery Savings Bank $350 "for Henrietta Barker," who was her sister. Some years after the deposit was made Mrs. Harbeck drew out the money, and applied it to her own use. The action was brought by the representatives of Henrietta Barker against the executors of Mrs. Harbeck to recover the amount of the deposit. The plaintiff recovered damages. The court, upon appeal, in affirming the judgment, say: "Mrs. Harbeck either deposited Henrietta Barker's money, or constituted herself a trustee of the fund by a completed gift of the money deposited." In the case of *Scott* v. *Harbeck*, 49 Hun, 292, brought by a *cestui que trust*, claiming under the same party who created the trust passed upon in the case last above cited, it was held that a similar deposit transferred the property, and that the act of withdrawing the money subsequently by the party who made the deposit did not affect the title of the *cestui que trust*. In the case at bar the deposit of the money in the savings bank to the credit of the sons of the testatrix is *prima facie* evidence of an intention to transfer to them the ownership of the funds. The declarations contained in the checks, by which the money was drawn out of the bank, "all money belonging to N. P. Jenness," and "all money belonging to Joseph K. Jenness," are evidence that the testatrix still considered the money to be the property of her son. All the evidence, taken together, satisfactorily proves that Mrs. George intended the money to be used for the benefit of her sons, except that she assumed to give away and use for other purposes a small sum of it a short time before her death. Her control of the money and her withdrawal of it from the bank are consistent with the theory of a trust, and her subsequent possession must, upon authority, be held to be in the capacity of trustee, rather than as the owner of the property. Even the statements testified to by the executrix from which she claims there was a gift to her show that the money was delivered to her by the testatrix because she thought she would be a mother to her son, and that he ought to be kept in ignorance of the fact that there was any money; and when asked if the doctor (her husband) should not be told, she said, "I can't leave this with the doctor. * * * He wouldn't be troubled with it." The decedent could not have thought the doctor would have objected to the trouble if she was speaking of a gift. The intention must have been to make the executrix a trustee, rather than the beneficiary of a gift. The fact of the subsequent deposit to the order of both the decedent and the executrix indicates that the parties so understood it. No other explanation has been given.

The rule was laid down by Justice Story that a party for whose benefit a trust is created may enforce its execution, although it was made without his knowledge, if it had not in the intermediate time been revoked by the person who created the trust. Eq. Jur. §§ 972–1045. There was at one time some uncertainty as to whether trusts created without pecuniary consideration were revocable before they came to the knowledge of the beneficiaries; but in the case of *Martin* v. *Funk* it was said that, if the author of the trust entertained a belief that the deposits might be withdrawn during her life, and the money

converted to her own use, it would not change the legal effect of her acts, although she did not intend the objects of her bounty to know of her gift until after her death. It was decided in the case of *Mabie* v. *Bailey*, *supra*, that a trust like the one under consideration, once established, no power of revocation having been reserved, was irrevocable. It follows that the acts of the testatrix in the case at bar in the withdrawal of the deposits and transfer of the money could not affect the rights of the objects of her first gifts, if she so intended. Of the money transferred to the executrix, the evidence leads to the conclusion that it was the intention of the decedent to preserve part at least for the benefit of her unfortunate son.

It is contended that this court has no jurisdiction to direct distribution of this property, and that, the alleged trust having been found to be valid, the proceeding, so far as this fund is concerned, should be dismissed. Section 2743 of the Code provides: "Where an account is judicially settled, as prescribed in this article, and any part of the estate remains and is ready to be distributed to the creditors, legatees, next of kin, husband, or wife of the decedent, or their assigns, the decree must direct the payment and distribution thereof to the person so entitled, according to their respective rights." It was held in the *Case of Collyer*, 4 Dem. Sur. 24, that the surrogate's court had jurisdiction under this section to try and determine the validity of a trust like the one in question, since without such determination the amount of the distributive share of each of the next of kin could not be fixed. So in the case of *Fowler* v. *Lockwood*, 3 Redf. Sur. 465, it was decided that the surrogate, as an incident to his power to determine questions concerning distributive shares, had the power to decide as to the validity of alleged gifts *causa mortis* by a decedent. This case came under the Revised Statutes, (volume 2, p. 95, § 71,) from which section 2743 of the Code is taken. In the case of *Killick* v. *Bank*, 1 N. Y. Supp. 501, the question arose whether the widow of a lunatic, who was his administratrix, was the owner of money which had been deposited in a bank in their names jointly. The court at general term in this department held that upon her accounting as administratrix the question as to whether it belonged to her individually or as administratrix can be determined.

The rule was stated in *Riggs* v. *Cragg*, 89 N. Y. 492, that "where the right to a legacy depends upon a question of construction of a will, which must be determined before a decree for distribution can be made, the surrogate has jurisdiction, * * * upon a final accounting, where all parties interested are before the court, to determine such construction as incident to the authority to make distribution." The court of appeals has also decided that the validity of a release by a party claiming property in the hands of an administrator or executor may be determined by the surrogate upon an accounting. *Harris* v. *Ely*, 25 N. Y. 138. See *In re Read*, 41 Hun, 95, in the Fifth department of the supreme court, to the same effect.

In view of the authorities quoted, there can be no doubt that this court, upon the judicial settlement of the accounts of this executrix, may decide whether there was a gift of the money drawn from the savings bank to the executrix, and, to that end, to decide whether the money was the property of the decedent. The evidence fails to establish such a gift, and, as before stated, it is sufficient to convince the court that the funds deposited in the Auburn Savings Institution, afterwards the Auburn Savings Bank, were the property of Noyes P. Jenness and Joseph K. Jenness, respectively. As it was held by the testatrix in trust, upon her death her executrix took the title to the same as trustee by virtue of her office, (*Emerson* v. *Bleakley*, 2 Abb. Dec. 27,) and must account therefor as executrix. Joseph K. Jenness being dead, his interest can only be paid to his legal representatives; and as the testatrix used a part of the funds in her life-time, such representative should be made a party to this proceeding, before it would be proper to make distribution of the funds.

As to the alleged gift of $212 to decedent's husband, the necessary elements do not exist to constitute a valid gift *inter vivos* or *causa mortis*, as was practically decided in an action brought in the supreme court to determine the title to the money.   Moreover, it is shown that this money belonged to the testa-tor's son, and could not have been given as alleged.   As to the gift of a watch, the evidence does not sustain a gift, and it should be delivered to the party named in the will, or its value accounted for by the executrix.   Costs are allowed to the petitioner, to Noyes P. Jenness, and to the special guardian.