IN THE MATTER OF THE JUDICIAL SETTLEMENT OF THE ACCOUNT OF JOHN L. HOBSON, AS ADMINISTRATOR, WITH THE WILL ANNEXED, OF SARAH M. HOBSON, DECEASED.

*Executors and administrators — when liable for assets not properly a part of the estate — credit for a payment made to the mother of an infant* cestui que trust — *an administrator allowed his expenses but denied commissions.*

Upon the final accounting of an administrator, with the will annexed, of Sarah M. Hobson, a question arose as to his liability to account for the proceeds of a certain bond and mortgage, in regard to which it was shown that the administrator's father had created a trust for the benefit of his mother, the testatrix, the trust fund being represented in part by the bond and mortgage in question, given by third persons and made payable to the testatrix; that the testatrix died leaving a will and naming the father as executor; that the father did not prove the will, but subsequently brought an action to establish the trust, to which the son (the administrator) was, in his individual capacity, made a party; that, in the judgment in that action, the bond and mortgage were mentioned as constituting an item of the trust estate; that thereafter the father died, and subsequently the son proved his mother's will; letters of administration thereon were issued to him, and he gave security for the due administration of the estate in an amount in which the said bond and mortgage was included, that he, as administrator, received the bond and mortgage, and was subsequently paid the amount secured to be paid thereby and satisfied the mortgage; that thereafter he begun a proceeding for an accounting, and in his account charged himself with the amount of said bond and mortgage.

The surety upon the bond of the administrator objected to his being charged with the said bond and mortgage.

*Held,* that as the son had at all times treated the bond and mortgage as assets of his mother's estate, and never as a part of said trust estate to which they properly belonged, he was liable to account for them in his capacity as administrator.

The cases upon this point reviewed.

Certain infants were entitled to share in the trust estate, and the administrator made a payment to their mother for them of a part of the sum realized upon said bond and mortgage, but it did not appear to what extent, if any, the mother had applied this sum towards their support.

*Held,* that the administrator was not entitled to credit for the amount so paid by him to the mother.

That the administrator was entitled to credit for the necessary expenses of the accounting, but should be denied commissions.

APPEAL by John L. Hobson, as administrator, with the will annexed, of Sarah M. Hobson, deceased, from so much of a decree,

entered in the Surrogate's Court of the county of New York on the 13th day of March, 1889, as found that he had converted the fund therein described to his own use, and had fraudulently wasted and disposed of the same, and which denied him commissions and charged him personally with the costs and expenses of his accounting, settled his account as stated in the decree and directed him to pay to James E. Heath, substituted trustee, $7,587.37, with interest, and which denied his application to amend his account and proceedings.

The referee, to whom the matter was referred by the surrogate of the county of New York, made certain findings substantially as follows:

That prior to the 19th day of May, 1866, the decedent, who was then the wife of George G. Hobson, was possessed of certain bonds, mortgages and stock, which had, before that time, been given to her by her husband, and that a portion of the said funds was invested in a bond for $15,000, secured by mortgage upon property upon the north-east corner of Broadway and White street, in the city of New York, said mortgage being executed by Lewis C. Austin, George W. Thorp and Charles V. Riley, then members of a firm doing business under the firm name of Austin, Thorp & Company.

That on the said 19th day of May, 1866, the said George G. Hobson settled in trust upon the decedent certain other bonds, making, in the aggregate, an estimated value of $100,000, and at the same time executed and delivered to the said Sarah M. Hobson an instrument which particularly set forth and described all the first mentioned bonds, mortgages and stock, including said mortgage for $15,000; and in said instrument the said George G. Hobson declared that all of the said funds were settled upon the said Sarah in trust, to be held for her own use, as to the income thereof, during her life, and for the use of the said George G. Hobson, as to the income thereof, during his life, if he should survive said Sarah M. Hobson, and after the death of both George and Sarah M. Hobson to be apportioned among their children in the manner designated.

That said Sarah M. Hobson thereafter received said property, and on the 31st day of May, 1866, duly executed and delivered to said George G. Hobson an instrument acknowledging that she had

received the same for the purpose and upon the trusts hereinbefore set forth.

That thereafter, and on or about the 1st day of May, 1867, the said Lewis C. Austin, George W. Thorp and Charles V. Riley, and their respective wives, executed a new mortgage in the same amount and upon the same premises to the said Sarah Magruder Hobson, and the mortgage first above mentioned was satisfied of record by the said Sarah M. Hobson.

That on or about the 18th day of November, 1874, the said George W. Thorp retired from the said firm of Austin, Thorp & Company, whereupon a new mortgage upon the same premises and in the same amount was executed to the said Sarah M. Hobson by Lewis C. Austin and Charles V. Riley and Elizabeth Riley, his wife, and the said Sarah M. Hobson discharged of record the said mortgage secondly above mentioned.

That the said Sarah M. Hobson died on the 28th day of July, 1875, leaving her said husband, George G. Hobson, her surviving.

That during the life of said Sarah M. Hobson, and after her death, and until on or about the 14th day of June, 1879, the said George G. Hobson had the practical charge and care of said trust fund, and collected the income thereof for the said Sarah during her life, and for his own use thereafter.

That on the said 14th day of June, 1879, a judgment was entered in the Supreme Court in an action in which the said George G. Hobson was plaintiff, and all the children and grandchildren of the said George G. Hobson and Sarah M. Hobson, who were interested in said trust fund, were defendants, by which judgment it was declared that said mortgage, together with said United States and certain railroad bonds therein set forth, constituted a portion of said trust fund, and that said George G. Hobson, from the death of Sarah M. Hobson, became sole trustee of said trust fund, and one Joseph Hobson, a brother of said George G. Hobson, was thereupon appointed by the said Supreme Court a trustee to be associated with the said George G. Hobson in the further execution of said trust.

That the said Joseph Hobson died in the year 1880, and the said George G. Hobson died on the 15th day of February, 1882.

That said Sarah M. Hobson left a last will and testament, in which she named her husband, George G. Hobson, as executor, and directed

the distribution of her estate, after the death of her said husband, to the same persons and in the same proportions as directed by said instrument of trust.

That no steps were taken during the life of said George G. Hobson for the probate of said will, but after his death the same was offered and admitted to probate, and letters of administration were thereupon granted on the 15th day of July, 1882, issued to the administrator now accounting.

That for several years before the death of said George G. Hobson the securities representing said trust fund were kept on deposit in a vault in the Bank of New York, and on the 26th day of July, 1882, the same were delivered to the administrator now accounting by the president of said bank, the administrator signing a receipt therefor as administrator of the estate of S. M. Hobson, deceased.

That at that time said $15,000 mortgage remained of record. payable to Sarah M. Hobson, individually.

That among the securities delivered to the accounting administrator by the president of the Bank of New York were United States bonds, registered in the name of George G. Hobson, trustee, of the par value of $10,000, and certain railroad bonds exceeding $40,000 in par value.

That on the 3d day of November, 1882, the said John L. Hobson presented a petition to the Supreme Court praying that he be appointed trustee, as successor to his father, George G. Hobson, and set forth that the United States secretary of the treasury refused to transfer said United States registered bonds until a new trustee should be appointed; and the said John L. Hobson was thereupon appointed by the Supreme Court trustee, as successor to George G. Hobson, deceased, on filing a bond in the sum of $5,000.

That on or about the 9th day of March, 1883, the said mortgage for $15,000, together with interest thereon then due, amounting to $1,172.80, was paid off by the mortgagors, the said John L. Hobson receiving the amount thereof, and executing a satisfaction as administrator C. T. A. of Sarah M. Hobson, deceased.

That on the 10th day of March, 1883, the said John L. Hobson deposited $15,272.50 of the amount received from said mortgage with the Union Trust Company to his credit as administrator of the estate of S. M. Hobson, deceased.

That, at divers times, the said John L. Hobson converted into cash all the other securities received by him from the Bank of New York, but the amount of money received therefor has not been shown before me.

That out of the moneys collected by said administrator from said mortgage, and deposited in the Union Trust Company, the administrator paid in various sums, from May 15, 1883, to June 11, 1884, the sum of $1,208 to Florence Hobson, the widow of George Hobson, deceased, and the mother of Florence and Georgina Hobson, infants, who were, together, entitled to one-sixth share of the trust fund, and to one-sixth share of the residuary estate of Sarah M. Hobson.

That, at the time the said payments were made by said administrator, said Florence Hobson had not been appointed guardian of said infants, and no evidence was adduced tending to show that the said moneys were necessary for the support of said infants, or that they were, in fact, expended for this purpose.

*Frank W. Arnold* and *Thomas Moore*, for the Public Administrator (substituted for John L. Hobson, who died pending the appeal), and the Fidelity and Casualty Company, appellants.

*Howard R. Bayne* and *Anson Maltby*, for the administrators of Sarah Whipple, James E. Heath, substituted trustee, Ellen L. Norris, Francis Hobson, and others, respondents.

Daniels, J. :

The controversy, as it was presented to and decided by the surrogate, related to the liability of John L. Hobson, as administrator with the will annexed, of Sarah M. Hobson, deceased, to account for the amount of a bond and mortgage payable to her and collected by him after his appointment as administrator of her estate. The debt, as it was first created, seems to have been the property of George G. Hobson, the husband of Sarah M. Hobson, who were the parents of the administrator John L. Hobson. On the 19th of May, 1866, George G. Hobson created a trust for the benefit of his wife during her life, and for his own benefit during his life in case of his survivorship. And a bond and mortgage executed by Austin, Falk & Company on or about the 1st of May, 1866, to Sarah M. Hobson, was made a part of the capital of this trust. That mort-

gage was satisfied and another taken in its place payable in the same manner. And this second mortgage was also discharged upon the retirement of George W Falk from the firm whose members executed the mortgage, and another mortgage was taken in its place executed by the remaining members of the same firm. This last mortgage was dated on or about the 18th of November, 1874, and, together with the bond accompanying it, was in like manner payable to Sarah M. Hobson. She died, after enjoying the income of the trust, as she was entitled to do so by the instrument creating it, on the 28th of July, 1875, nominating her husband as the executor of her will. But he did not prove the will, but continued to receive the proceeds of the trust until he died on the 14th of February, 1882. During his lifetime, and in 1878, he brought an action to establish the trust, making his son John L. Hobson one of the parties. And a judgment was recovered in that action to that effect. And in that judgment the mortgage is mentioned as one of the items of the trust. As a matter of fact, therefore, this mortgage belonged to the trust estate as a part of its capital. But after the decease of his father, and on the 14th of July, 1882, John L. Hobson applied to the surrogate for letters of administration, with the will annexed, on the estate of his mother Sarah M. Hobson, stating its value to be the amount of this mortgage. Letters in that form were issued to him, the will at that time having been probated, and his bond was fixed at the sum of $30,000. And the Fidelity and Casualty Company in the city of New York, one of the appellants from the surrogates's decree, became the surety on this bond. After becoming in this manner qualified as the administrator of the estate, with the will annexed, he received a large number of securities, including this bond and mortgage for $15,000, and gave a receipt for them, describing himself as the administrator of the estate of S. M. Hobson, deceased. An appraisement of the estate was also made at his instance, in which this bond and mortgage was the property appraised as the estate of the deceased testatrix. And this administrator, with the will annexed, has in that capacity received the money secured by the mortgage and discharged it as satisfied. And in October, 1884, he applied to the surrogate for the settlement of his accounts, charging himself in his application with the amount of this mortgage and the interest he had received upon it, and then crediting himself

with certain payments made by him, leaving a balance, as he stated it, of .$6,104.95, in his hands yet to be distributed. His petition and accounts were verified in the usual manner, affirming the accuracy of the statements contained in them. It appeared upon the hearing before the referee appointed by the surrogate, and whose conclusions were substantially confirmed by the surrogate, that he had made certain disbursements in his capacity of administrator, and also paid to two of the legatees entitled to share in the distribution of the estate after the expiration of the trust under the terms of the wills to which it was subjected, further sums of money, leaving a balance in his hands of the sum of $7,587.37. And 'that balance he was ordered by the decree within thirty days to pay over, with interest, to a substituted trustee who had been appointed to take charge of the trust estate in that capacity.

In November, 1882, John L. Hobson, the administrator, applied for his own appointment as trustee of the trust estate, and an order was made, with the consent of parties interested in the trust, appointing him such trustee on giving a bond in the sum of $10,000. But in point of fact the bond given by him upon that appointment was in the sum only of $5,000; and from the evidence in the case, as well as the conclusion of the referee before whom it was taken, which was adopted by the surrogate, it did not appear that John L. Hobson, as administrator, had ever made any transfer, either directly or indirectly, of this bond and mortgage, or of the moneys received upon it, to himself, as trustee under this appointment; and in the absence of that proof, and his continued action as administrator, the presumption was warranted that he still continued to hold the proceeds of the mortgage in the capacity in which he had received the security itself, which was that of administrator with the will annexed. (*Matter of Hood*, 104 N. Y., 103.)

The administrator appealed from the decree, and afterwards died, and the public administrator was substituted as a party to the appeal in his place. In behalf of the administrator, exceptions were taken to the decree of the surrogate, so far as it held him liable as administrator with the will annexed, liable to account for this bond and mortgage and the disposition of its proceeds, and to the direction contained in the decree to pay over the residue to the substituted trustee of the trust estate; and in support of these objections it has

been contended, as the bond and mortgage formed a part of the trust estate, it could not be collected and administered upon by the administrator of Mrs. Hobson, with the will annexed. But it is quite clear from the form in which the bond and mortgage were taken that he, as the administrator of the estate, with the will annexed, was entitled to collect this indebtedness. The contract authorized him, as the administrator of the estate, to receive the money and discharge the security. (*Caulkins* v. *Bolton*, 31 Hun, 458; 98 N. Y., 511; *Schluter* v. *Bowery, etc., Bank*, 117 id., 125.)

He not only received the security by virtue of his appointment as the administrator of the estate, but he also collected the moneys upon it, and disbursed them, so far as they were paid out, in that capacity, and throughout his entire management of the estate acted in that manner, and not in any sense as a trustee of this trust. And after having received the security and collected and retained the money upon it in that capacity, he was liable to account for it under his obligations of administrator of this estate. A similar question of liability was considered in *De Valengin's Administrators* v. *Duffy* (14 Peters, 282), where moneys had been collected by the administrator of an estate which belonged to another party, and, in point of fact, formed no part of the assets of the estate. And it was there objected that the party accountable could not be called to account for such money in the capacity or under the liability of an administrator. But it was said in the opinion of the chief justice that, " Upon a full consideration of the nature and of the various decisions on the subject, we are of opinion that whatever property or money is lawfully recovered or received by the executor or administrator, after the death of his testator or intestate, in virtue of his representative character, he holds as assets of the estate, and he is liable therefor in such representative character to the party who has a good title thereto. In our judgment this, upon principle, must be the true doctrine." (Id., 290.) And it was further added : " We do not mean to say that the principal may not, in such cases, resort to the administrator in his personal character, and charge him *de bonis propriis* with the amount thus received. We think he may take either course at his election. But that whenever an executor or administrator, in his representative character, lawfully received money or property, he may be compelled to respond to the party

entitled in that character, and shall not be permitted to throw it off after he has received the money in order to defeat the plaintiff's action." (Id., 291.) This is a direct authority supporting not only the jurisdiction, but the correctness of the surrogate's decree, so far as it depended upon the liability of this administrator to account for these moneys in that capacity. And the cases of *Graham* v. *Van Duzer* (2 Redf., 322); *Calyer* v *Culyer* (4 id., 305) and *Perkins* v. *Perkins* (46 N. II., 110), support the conclusions in this manner declared by the court. And so, also, but not so fully, do the cases of *Wells* v. *Wallace* (2 Redf., 58); *Matter of Collyer* (4 Dem., 24), and *Du Bois* v. *Brown* (1 id., 317).

Other authorities have been relied upon and brought to the attention of the court in support of the appeal, which have been cited as in conflict with the surrogate's decree. But they do not appear to be so upon an examination of them. For in *Shumway* v. *Cooper* (16 Barb , 556), where the jurisdiction of the surrogate was considered as to the disposition of the proceeds of the sale of infant's lands, it did not appear that the personal representative had received those proceeds in his character as such, and they consequently became no part of the assets of the estate in his hands. The same is true of the case of *Vulte* v. *Martin* (44 How., 18), where the proceeds were received by the party as a trustee, which, of course, excluded the jurisdiction of the surrogate over their disposition. In *Anderson* v. *Thompson* (38 Hun, 394) the funds collected were held in trust, and the personal representative was in no sense entitled to receive and mingle them as assets with the estate. The same thing is also true of *Levy's Estate* (1 Tucker, 148), where the disposition of the rents of real estate came up for consideration. And, as they were disposed of by the statute relating to the descent of real estate, it was rightly held that the administratrix had no legal right to receive them. The *Matter of Calyer* v. *Calyer* (4 Redf., 305) is similar in its effect. For the moneys there in controversy neither formed any part of the assets of the estate, nor were they collected or received under any obligation entitling the personal representative to interfere with them. *Matter of Collyer* (4 Dem., 24) was a proposal to bring the personal representative to an account for trust funds on deposit in a savings bank. There was clearly no such liability on his part, and no jurisdiction over the subject-matter vested in the

surrogate. And no case has been cited or discovered where the administrator of the estate was entitled, by the contract passing into his possession by virtue of his appointment, to collect a sum of money, which was afterwards received by him in his representative capacity, and so managed and accounted for, in which it has been held that he should be relieved from such accounting, or exonerated from liability, for the moneys acquired by him in that manner. But where the administrator is authorized by the contract itself, as he was by the form of these securities, to take possession of them and collect the money as administrator, there he has been held accountable, after receiving it in that capacity, under the decree of the surrogate having jurisdiction over the administration of the estates of deceased persons; and there seems to be no valid reason for making this case an exception to the operation and effect of that principle. The Code of Civil Procedure, by subdivision 3 of section 2472, has vested in the surrogate jurisdiction to direct and control the conduct and settle the accounts of executors, adminis-trators and testamentary trustees. And that seems literally to include the case of this administrator, for he not only became the administrator of this estate, but his appointment was appar-ently upon the basis that this bond and mortgage was an asset of the estate. It was received by him as such, and he collected it in that capacity and made a deposit of the amount collected to his credit, as administrator, and distributed the moneys disbursed by him as the administrator of this estate; and when that had been accomplished he applied for the settlement of the accounts, including this as the asset of the estate in the same capacity. There seems to be no substantial reason, therefore, for doubting his liability, as administrator, created in this manner, or for doubting the jurisdic-tion of the surrogate over the case as it was presented to him for his decision.

It was proved by the evidence that the sum of $1,108, and, perhaps, more than that, was paid over by the administrator to Mrs. Florence Hobson, who is the mother of Florence and Georgiana Hobson. They were entitled, as the daughters of a deceased son of the testa-trix, to participate in the distribution and division of the trust estate. Their father was deceased, and this money was paid over to their

mother with whom they resided. And it would undoubtedly have been allowed, in whole or in part, by way of credit to the administrator in the settlement of his accounts, if it had been made to appear that the money was devoted to the support, maintenance and education of these two infant children. But that, as a matter of fact, was not established upon the hearing before the referee or the surrogate. But the most that was made to appear was that the money was expended by Mrs. Hobson in the support of herself and these two infant children. What amount was expended for their benefit was not made to appear. And neither the referee nor the surrogate had any means of determining what proportion of the money had been devoted to the benefit of these two infant children. In the absence of that proof it may be assumed that it was mainly appropriated by Mrs. Hobson for her own support and maintenance, leaving but a small part of it devoted to the necessities of these children. And the surrogate, consequently, had no evidence before him by which it could be declared or held that any specific part of this money had been devoted to the benefit of the infants. Mrs. Hobson was not their guardian. And it was incumbent upon the administrator, after he had paid the money over to her, to prove the amount that had been used in the support and maintenance of the infants, to entitle him to credit for those payments. That he failed to do, and for that failure this credit was properly rejected by the surrogate.

It appeared, in the course of the proceeding, that the administrator had delivered the sum of $1,256.78 to his counsel for safe keeping, and that this had been reduced, by disbursements made in the payment of referee's and stenographer's fees, to the sum of $642. So far as the balance still remains, the right to have it applied as a credit to the administrator is not denied. But it has not been formally paid over, it seems, to the trustee. And whenever that payment shall be made, to that extent the amount will be deducted from the decree. And there seems to be no good reason for denying the administrator the right to a credit for the balance of this sum of money, inasmuch as the money has been used to defray the necessary expenses of the accounting. To that extent the decree should be modified, as it does not appear, by the statement of the credits contained in it, that these disbursements have been allowed to the administrator. But in no other respect does it appear that

the decree should be subjected to any change or modification. For as the large balance still remaining has been illegally disposed of by the administrator — as he seems to have known, by reason of his being a party to the suit brought for the construction and establishment of the trust, that these moneys belonged to the trust estate in point of fact, and should have been paid over as such by him — he was rightly deprived of his commissions, and charged with the costs and allowances made by the decree.

The action of the surrogate in denying the motion to amend or change the account was entirely proper, for the administrator had deliberately presented it in the form in which it was verified by him. And all the facts touching his liability to account for these moneys as administrator were as fully and clearly before the court as they would have been if this amendment had been permitted. And no injustice, therefore, was caused to the administrator by the denial of the motion. The order of the surrogate disposing of that motion should be affirmed, with ten dollars costs and such disbursements as may have been expended on account of it in the appeal, and the decree of the surrogate should be so far modified as to include the deduction of this sum of $1,256.78, upon the payment to the trustee of the balance remaining of $642. And as so modified, the decree should be affirmed, without costs of the appeal.

LAMBERT, J., concurred.

Order affirmed, with ten dollars costs and such disbursements as may have been expended on account of it in the appeal, and the decree modified as directed in opinion, and as modified affirmed, without costs of the appeal.